568 So.2d 225 (1990)
Susan BROUSSARD, Plaintiff-Appellant,
v.
SEARS ROEBUCK AND COMPANY, et al., Defendants-Appellees.
No. 89-388.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
*226 Vincent J. Saitta, Lafayette, for plaintiff-appellant.
Jeansonne & Briney, Patrick J. Briney, Lafayette, for defendant-appellee Sandefur.
Gachassin, Hunter & Sigur, Lelia Anne Collier, Lafayette, for defendant-appellee Sears.
Laborde & Neuner, Frank X. Neuner, Lafayette, for defendant-appellee La. Co.
Before DOMENGEAUX, C.J., and FORET and KNOLL, JJ.
KNOLL, Judge.
Plaintiff, Susan Broussard, appeals the dismissal of her medical malpractice action against Dr. George P. Fink, an optometrist, on a peremptory exception of prescription. The trial court concluded that the list contained in LSA-R.S. 9:5628 is illustrative rather than exclusive, and Fink falls under the purview of the 3 year prescriptive period.
On appeal, Broussard contends the trial court erred in concluding that LSA-R.S. 9:5628 is applicable to optometrists and that her claim has prescribed.

FACTS
A review of the record reveals that the trial court decided the peremptory exception filed only by Dr. Fink against Broussard after considering the pleadings and memoranda submitted by counsel. Nowhere in the record does it appear that any testimony or written evidence was offered by either litigant for purposes of this peremptory exception of prescription.[1] Therefore, in reviewing the soundness of the trial court's granting of the peremptory exception of prescription, we are limited to the allegations contained in the petition. Whitnell v. Menville, 540 So.2d 304 (La. 1989); Leyva v. Laga, 549 So.2d 914 (La. App. 3rd Cir.1989). Refer to the attached appendix for the pertinent allegations of the petition.
The substance of plaintiff's allegations is that she was examined by Dr. Fink and/or Dr. Robert D. Sandefur, another optometrist, on several occasions beginning on or about February 11, 1983, through and including September 11, 1986. When Broussard was first examined, the record shows that she was in her middle twenties. She alleges that in all of these examinations she complained of vision problems which both optometrists should have diagnosed as a glaucoma condition.
Because of the optometrists' failure to properly diagnose the eye disease, plaintiff did not learn of the eye condition until July 14, 1987, when another optometrist (the record does not reflect his/her name) recognized the problem and immediately referred her to a physician for emergency treatment. As a result, plaintiff suffers from an advanced stage of glaucoma which requires extensive medical treatment and which eventually may cause blindness. In sum, Broussard contends that both Fink and Sandefur were negligent in failing to properly diagnose and/or discover the glaucoma condition and these acts of negligence allowed her condition to worsen to the extent *227 that she may lose her eyesight despite extensive medical treatment.
The trial court granted the peremptory exception of prescription and dismissed Broussard's claim against Dr. Fink.[2] The judgment is silent as to the other defendants.

LAW
In deciding the merits to this appeal, we must first address whether optometrists fall under the ambit of LSA-R.S. 9:5628, which mandates a 3 year prescriptive period for medical malpractice actions. In opposition to the peremptory exception of prescription, Broussard contends the statute does not apply to optometrists since they are not specifically listed as one of the covered medical practitioners. Fink concedes that optometrists are not specifically listed in the statute but argues that the list is illustrative rather than exclusive and holding otherwise would disrupt the cohesive and well integrated legislative scheme which regulates medical malpractice actions. Specifically, Fink contends that LSA-R.S. 9:5628 must be read in conjunction with the Medical Malpractice Act (LSA-R.S. 40:1299.41 et seq.) to include optometrists.
LSA-R.S. 9:5628(A) provides in pertinent part:
"No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." (Emphasis added.)
Originally, LSA-R.S. 9:5628 was enacted in 1975 in response to sharp increases in medical malpractice insurance rates and applied only to physicians, dentists and hospitals. Valentine v. Thomas, 433 So.2d 289, (La.App. 1st Cir.1983), writ denied, 440 So.2d 728 (La.1983); See also, Recent Medical Malpractice LegislationA First Checkup, 50 Tul.L.Rev. 655 (1976). In 1976, the statute was amended by Act # 214 to include chiropractors and in 1987, Act # 915 added psychologists to the list.
Our brethren of the First Circuit has limited the interpretation of the statute to its plain wording. Marcel v. La. State Dept. of Public Health, 492 So.2d 103 (La. App. 1st Cir.1986), writ denied, 494 So.2d 334 (La.1986). In Marcel, the Court concluded that by its own terms LSA-R.S. 9:5628 does not apply to either the Louisiana Department of Health and Human Resources or the State of Louisiana because neither is a hospital, physician, chiropractor or dentist.
Under the Medical Malpractice Act (LSA-R.S. 40:1299.41 et seq.), a "health care provider" is defined as:
"a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, or psychologist, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee, or agent thereof *228 acting in the course and scope of his employment." (Emphasis added.)
The practice of optometry is defined as the examination of the eye without the use of drugs or medicine for nearsightedness, farsightedness and the fitting of glasses to correct these defects. Webster's New Universal Unabridged Dictionary 1256 (2d ed. 1983).
The profession of optometry originated in the late nineteenth century when a small number of opticians began to assume the additional task of determining the optical error of the eye and the amount of correction needed in the patient's eyeglasses. After assuming this function which was formerly the exclusive province of physicians, opticians later successfully sought legislation in numerous states to allow their examinations of the eye under the professional title of optometrists. Optometry Drug Laws: Their Propriety and Malpractice Ramifications, 24 Loy.L.Rev. 221 (1978) (hereafter Optometry Drug Laws).
In Louisiana, the legislature has restricted the practice of optometrists to exclude those activities which are traditionally the function of physicians. (Prescribing medicine or practicing medicine or surgery except for the possession and use of topical ocular diagnostic pharmaceutical agents.) LSA-R.S. 37:1061(15). In addition, optometrists are prohibited from using the title of "Doctor" or "Dr." as a prefix to their names without having the term "Optometrist" as a suffix or in connection with it. LSA-R.S. 37:1061(5). The purpose of the statute is to distinguish optometrists from medical doctors (i.e., ophthalmologists) thereby preventing any confusion of their respective fields of expertise. Fairchild v. Brian, 354 So.2d 675 (La.App. 1st Cir. 1977); See also, Optometry Drug Laws at 223-226.
In fact, the field of optometry is limited to:
"that practice in which a person employs or applies any means other than surgery, for the measurement of the powers and testing the range of vision of the human eye, and determines its accommodative and refractive state, general scope of function, and the adaptation of frames and lenses, including contact lenses in all their phases, to overcome errors of refraction and restore as near as possible, normal human vision. The practice of optometry does not include the use of drugs or medication, except the use of topical ocular diagnostic pharmaceutical agents and then only by a licensed optometrist and in accordance with the provisions of this Chapter. The practice of optometry does not include the use of pharmaceutical agents, in the treatment of disease." LSA-R.S. 37:1041(3). (Emphasis added.)
Louisiana courts have long held that the practice of optometry is closely related to the public health and public welfare. Louisiana State Bd. of Optom. Exam v. Pearle Optical, 248 La. 1062, 184 So.2d 10 (1966); Kihneman v. Louisiana State Board of Optom. Exam., 96 So.2d 402 (La.App. 2nd Cir.1957), writ denied, (November 12, 1957).
When a law is clear and free from ambiguity, the letter of it is not to be disregarded under the guise of interpretation or pursuing its spirit. LSA-R.S. 1:4; Backhus v. Transit Cas. Co., 549 So.2d 283 (La.1989); Gill Trailer & Equip. Rentals, Inc., v. S. D'Antoni, Inc., 282 So.2d 714 (La.1973); cert. denied, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). Prescriptive statutes are strictly construed, and the facts of the case must bring the action clearly within the specific provision of the law sought to be applied. Thibodeaux v. Bordelon, 488 So.2d 244 (La.App. 3rd Cir. 1986). Moreover, the courts are bound to apply the law as it is written and it is for the legislature to amend the statute if it is inequitable. Crescionne v. La. State Police Retire. Bd., 455 So.2d 1362 (La.1984).
In its present form, the prescriptive statute does not specifically include optometrists. Nor does the statute have a "catch-all phrase" such as "health care provider" to include optometrists. Rather, it specifically covers only five health-care providers for medical malpractice actions. We glean from the history of the statute that the legislature deliberately extended this *229 prescriptive protection to only those health-care providers which it deemed necessary. Optometrists' field of expertise lies not in the practice of medicine but only in the testing of the human eye for optical errors. Although optometrists do perform a function which is closely related to the public health and welfare, apparently the legislature felt that optometry is not sufficiently related to the practice of medicine to warrant inclusion under the prescriptive statute.
Contrary to Fink's contention, we fail to see how our application of this statute as it is written will disrupt the "well integrated scheme which regulates medical malpractice actions". By its language, the legislature created this scheme of statutes to deal with medical malpractice actions and chose to exclude optometrists from the prescriptive statute. This court cannot speculate about possible contrary underlying intentions of the legislature where the statute is clear. We perceive no ambiguity in the statute and must implement the letter of the law. For the above reasons, we conclude that optometrists do not fall under the purview of LSA-R.S. 9:5628.
Having concluded that optometrists do not fall under the ambit of LSA-R.S. 9:5628, we must determine whether, on the face of the petition, Broussard's claim has prescribed.
Delictual actions are subject to a liberative prescription of one year commencing to run from the day injury or damage is sustained. La.C.C. Art. 3492. However, under the judiciallycreated doctrine of contra non valentum, a plaintiff has one year to institute suit from the date on which he discovers or should have discovered the grounds for his cause of action. Crier v. Whitecloud, 486 So.2d 713 (La. 1986).
In the case sub judice, Broussard alleges in her petition that she did not learn of the glaucoma condition until July 14, 1987, when another optometrist diagnosed the condition and referred her to a physician. Her suit for damages was filed on May 3, 1988. Since, on the face of the petition, the claim has not prescribed and Fink offered no evidence to the contrary, we conclude that the trial court erroneously granted the exception of prescription.
For the foregoing reasons, the judgment of the trial court granting the exception of prescription is reversed and set aside. The case is remanded to the trial court for further proceedings, with right being reserved to the defendant to reurge his exception of prescription. Costs of this appeal are assessed to George P. Fink.
REVERSED AND REMANDED.
FORET, J., concurs in the result.
APPENDIX
"PETITION FOR DAMAGES
NOW INTO COURT, through undersigned counsel, comes SUSAN BROUSARD, of the full age of majority and a resident of the Parish of Lafayette, State of Louisiana, who respectfully represents as follows:
1.
That named defendants herein are the following:
* * * * * *
(D) GEORGE P. FINK, of the full age of majority and a resident of the Parish of Calcasieu, State of Louisiana, hereinafter sometimes referred to as `FINK';
(E) ROBERT D. SANDEFUR, of the full age of majority and a resident of the Parish of Lafayette, State of Louisiana, hereafter sometimes referred to as `SANDEFUR';
* * * * * *
4.
That at all times pertinent hereto, in particular, commencing on or about February 11, 1983, through and including September 11, 1986, petitioner, SUSAN BROUSSARD, repeatedly sought treatment from and received eye examinations at the SEARS OPTICAL CENTER while said center was staffed by ROBERT D. SANDEFUR and/or GEORGE P. FINK.

*230 5.
That at all times pertinent hereto, and namely during the period of time herein-above referred to, petitioner would continually complain of difficulties with her eyesight, giving specific complaints and problems, which information was always given to ROBERT D. SANDEFUR and/or GEORGE P. FINK, and/or their employees, servants, and agents and/or the employees, servants, and agents of SEARS OPTICAL CENTER; COLE NATIONAL CORPORATION and/or GATE CITY OPTICAL OF LOUISIANA, INC.
6.
That at all times pertinent hereto, but in more particular, on or about July 14, 1987, petitioner was still continuing to experience difficulty with her eyesight and went to a different optometrist for an eye examination, and was immediately upon completion of an eye examination sent to a medical doctor for emergency treatment of a severe glaucoma condition.
7.
That at all times pertinent hereto, and in particular, subsequent to July 14, 1987, petitioner, SUSAN BROUSSARD, had to undergo extensive medical treatment for her serious glaucoma condition, which condition at the time of diagnosis on July 14, 1987, was in such a severe state that petitioner's permanent eyesight has been left in jeopardy, and she has had to undergo extensive surgical care, as well as, continual close follow-up medical treatment.
8.
That at all times pertinent hereto, petitioner had went to SEARS OPTICAL CENTER, and/or GEORGE P. FINK, and/or ROBERT D. SANDEFUR, and/or COLE NATIONAL CORPORATION, and/or GATE CITY OPTICAL OF LOUISIANA, INC., to receive treatment and care for her eyes; however, at no time was it conveyed to petitioner and/or was a diagnosis made of petitioner that she suffered from glaucoma, and it was not until discovery on July 14, 1987, that the true nature of petitioner's ongoing eye problems was diagnosed.
9.
That at all times pertinent hereto and based upon information and belief, the previous eye examinations, treatments, and diagnoses rendered to the petitioner, SUSAN BROUSSARD, by the defendants, SEARS OPTICAL CENTER, DR. ROBERT D. SANDEFUR, and DR. GEORGE P. FINK, and/or GATE CITY OPTICAL OF LOUISIANA, INC., and/or COLE NATIONAL CORPORATION, was improper and resulted in the disease of glaucoma going undetected until such time as it had reached a severe and advanced state which now threatens the total eyesight of petitioner.
* * * * * *
15.
The advanced degree and severity of petitioner's glaucoma condition was caused in whole or in part by the lack of care required of persons similarly situated in the medical field, and/or optometry field, fault, strict liability, absolute liability, and/or negligence of DR. GEORGE P. FINK, his servants, agents, or employees, which consisted of but is not limited to the following acts:
(a) Failure to timely or properly diagnose;
(b) Failure to properly examine and determine the cause of petitioner's eye problems;
(c) Failure to use proper equipment and render proper treatment, and/or administer appropriate medication necessary to care for petitioner during her eye examinations and subsequent treatment;
(d) Failure to perform the proper procedures, treatments, or examinations with qualified personnel and staff;
(e) Failure to properly supervise persons on his staff assisting in the examination and treatment of the petitioner;
(f) Performing the resulting examinations and procedures with staff who lack *231 the necessary training, education, and experience required to treat the petitioner;
(g) Failure to exercise the degree of skill ordinarily employed by persons similarly situated;
(h) Failure to perform the procedures and exercise the skill ordinarily performed and exercised by members of the medical profession, and in particular, opticians and optometrists;
(i) Failure to exercise the standard of care practiced by members of the medical profession and the specialty of optometry;
(j) Failure to timely diagnose and treat the conditions, resulting in the severe degenerative glaucoma condition experienced by the petitioner;
(k) Failure to properly monitor the ongoing difficulties being experienced by petitioner;
(l) Failure to obtain an independent consult with an ophthalmologist and/or failure to refer to an ophthalmologist for treatment and examination;
(m) Any and all other acts of negligence which will be proven at the time of trial.
16.
The advanced degree and severity of petitioner's glaucoma condition was caused in whole or in part by the lack of care required of persons similarly situated in the medical field, and/or optometry field, fault, strict liability, absolute liability, and/or negligence of DR. ROBERT D. SANDEFUR, his servants, agents, or employees, which consisted of but is not limited to the following acts:
(a) Failure to timely or properly diagnose;
(b) Failure to properly examine and determine the cause of petitioner's eye problems;
(c) Failure to use proper equipment and render proper treatment, and/or administer appropriate medication necessary to care for petitioner during her eye examinations and subsequent treatment;
(d) failure to perform the proper procedures, treatments, or examinations with qualified personnel and staff;
(e) Failure to properly supervise persons on his staff assisting in the examination and treatment of the petitioner;
(f) Performing the resulting examinations and procedures with staff who lack the necessary training, education, and experience required to treat the petitioner;
(g) Failure to exercise the degree of skill ordinarily employed by persons similarly situated;
(h) Failure to perform the procedures and exercise the skill ordinarily performed and exercised by members of the medical profession, and in particular, opticians and optometrists;
(i) Failure to exercise the standard of care practiced by members of the medical profession and the specialty of optometry;
(j) Failure to timely diagnose and treat the conditions, resulting in the severe degenerative glaucoma condition experienced by the petitioner;
(k) Failure to properly monitor the ongoing difficulties being experienced by petitioner;
(l) Failure to obtain an independent consult with an opthalmologist and/or failure to refer to an ophthalmologist for treatment and examination;
(m) Any and all other acts of negligence which will be proven at the time of trial."
NOTES
[1] The minutes reflect the following:

"This matter previously fixed for this date to be taken up on an Exception of prescription, filed on behalf of Dr. George Fink. The court advised the clerk that this matter would be submitted on briefs."
[2] In its written reasons, the trial court erroneously concluded that in Chivleatto v. Divinity, 379 So.2d 784 (La.App. 4th Cir.1979), "R.S. 9:5628 was interpreted to apply to a nurse, even though the class was not specifically enumerated in R.S. 9:5628." In fact, Chivleatto does not address the issue of prescription but only holds that a particular nurse and hospital did not qualify as health care providers under the Medical Malpractice Act. (LSA-R.S. 40:1299.41 et seq.)