# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-00036-SCT

*JOHN FRANK STEGBAUER*

*v.*

*VIVIAN F. STEGBAUER*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/94 |
| TRIAL JUDGE: | HON. WILLIAM L. STEWART |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD V. DYMOND |
| | KELLY C. WALKER |
| ATTORNEY FOR APPELLEE: | HARRY M. YOSTE JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

This is a domestic relations case on appeal from Harrison County Chancery Court which granted a divorce between John Frank Stegbauer and Vivian F. Stegbauer.

I.

John filed a bill of complaint for divorce in Harrison County on September 16, 1993. John sought divorce on grounds of habitual cruel and inhuman treatment, Miss. Code Ann. § 93-5-1, or alternatively, on grounds of irreconcilable differences, Miss. Code Ann. § 93-5-2. On October 19, 1993, Vivian filed a counter claim for divorce alleging adultery, or alternatively, on grounds of habitual cruel and inhuman treatment.

A trial was held on November 16, 1994, in Harrison County before Chancellor William L. Stewart.

At trail, John withdrew his complaint for divorce and Vivian proceeded with her counterclaim for divorce on the grounds of adultery. The trial court rendered a bench opinion and the final judgment was rendered on December 2, 1994. The trial court granted Vivian a divorce from John on grounds of adultery. The court awarded John the automobile, but ordered him to pay an equitable division of $4,500.00 at the rate of $150 per month. All other personal property remained property of the person in possession. The court ordered John to pay Vivian $2,340.00 as an equitable division of the joint debts of the parties. Vivian was awarded $10,000.00 as lump sum alimony, payable by John in ten annual installments of $1,000.00. Vivian was awarded $200.00 per month in periodic alimony. Finally, Vivian was awarded $1,500.00 in attorney's fees. On December 29, 1994, John filed an appeal to this Court.

## II.

John and Vivian first married on September 18, 1976. They remarried on June 30, 1982. They were divorced for six weeks during their seventeen year marriage. John and Vivian separated on July 11, 1993, in Biloxi, Mississippi. No children were born from their marriage. Vivian has four children of her own. From 1982 until 1989, only one of Vivian's children lived with John and Vivian.

Vivian is employed with Memorial Hospital Gulfport as a secretary in the education department. Her financial statement reflects that she spends more than she makes, but tries to make ends meet. Vivian's financial report reflects a gross monthly income of $1,233.24. Vivian's financial report reflects that she nets $956.19 per month, and her total expenses per month are $1,360.00. Vivian has two outstanding debts which she owes her stepfather, R.L. Braun, totaling $11,275.00 . The first debt is $4,680, which was taken before the separation. This loan was taken to help John and Vivian pay the bills. Vivian signed a promissory note, executed July 29, 1993, to repay her stepfather the $4,680.00 loan. The second loan, in the amount of $6,595.00, was taken after the separation. John has not contributed to her support since the separation. Furthermore, Vivian has incurred $1,938.00, plus $88.00, in attorney's fees and expenses. She has already paid $850.00 toward these fees and expenses and pays installments of $50.00 per month toward the balance.

Vivian resides in the home where she and John lived together before the separation. Vivian's stepfather owns the home. The stepfather bought the house from Vivian's aunt's estate in September 1993. The purchase price was $32,000.00. Vivian listed rent as a $350.00 expense per month on her financial statement. The stepfather pays the taxes. John stated that Vivian threw him out of the home on April 2, 1993.

The couple jointly owns a 1988 Oldsmobile Cutlass Sierra. The car was paid for out of John and Vivian's joint bank account. They paid for the car out of their common earnings.

During the course of their marriage, John and Vivian moved often. They met in Gulfport, moved to Greenville, Mississippi, then moved to Memphis, Tennessee. In October 1982, they moved to Port Arthur, Texas. In 1984, they moved to Houston, Texas. In February, 1989, they moved to New Orleans, Louisiana. In 1991, they returned to Gulfport. All of these moves were the result of John obtaining better jobs. Vivian worked as a secretary in all of these places, sometimes receiving a pay decrease, sometimes a pay increase. After returning to Gulfport, Vivian was unemployed temporarily while she helped her stepfather take care of her mother in Memphis. Vivian had a one week, three week cycle while caring for her mother in Memphis, staying one week in Memphis and then returning

home for three weeks. However, Vivian did secretarial work at home on an independent basis during this time.

John is a traveling salesman, selling industrial and automobile parts and fasteners for Curtis Industries Incorporated. John's territory covers south Mississippi. John's job requires that he have a car in order to cover his territory. John is not paid a salary, but rather, his pay is based solely on commission. He grosses an average $2,039.00 per month. He estimates that his living costs per month are $1,648.00 per month. John has no outside income sources. John states that he is aware of owing, together with Vivian, money to Vivian's stepfather. However, John states that they only owe Vivian's stepfather $2,600.00. In the discrepancy between $4,680.00 and $2,600.00, John claims that some $500.00 was for Vivian's medical expenses that he thought was a gift.

John states that Vivian threw him out of the home on April 2, 1993. After leaving the home, John moved into an apartment. John had to move out of the apartment in late June due to a fire in the apartment building. Since John and Vivian were seeing each other, and their relationship seemed very amicable, John moved back into the house with Vivian. John moved out of the house in mid July 1993. John now resides in an apartment with a woman and he admits this an adulterous relationship. John pays $345.00 in rent each month. His woman companion does not contribute payment of the rent. John stated on his financial statement that he spends $400.00 per month in food. Although John admits that he pools household items such as food with his woman companion, John claims that the $400.00 figure is solely his expense.

## III.

## WHETHER THE COURT CORRECTLY AWARDED VIVIAN ATTORNEY'S FEES?

Generally, the award of attorney's fees in divorce cases is left to the sound discretion of the chancellor. *Lenoir v. Lenoir*, 611 So.2d 200, 204 (Miss. 1992); *Cheatham v. Cheatham*, 537 So.2d 435, 440 (Miss. 1988)(*citing Holleman v. Holleman*, 527 So.2d 90, 95 (Miss. 1988); *Carpenter v. Carpenter*, 519 So.2d 891, 895 (Miss. 1988); *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982)). Absent an abuse of discretion, the chancellor's award of attorney's fees is usually upheld. *Armstrong v. Armstrong*, 618 So.2d 1278, 1282 (Miss. 1993); *Martin v. Martin*, 566 So.2d 704, 707 (Miss 1990); *Kergosien v. Kergosien*, 471 So.2d 1206, 1212 (Miss. 1985); *Ladner v. Ladner*, 436 So.2d 1366, 1375 (Miss. 1983). An award of attorney's fees is inappropriate when the party has the ability to pay the attorney's fees. *Brooks v. Brooks*, 652 So.2d 1113, 1120 (Miss. 1995)(*quoting Hammett v. Woods*, 602 So.2d 825, 830 (Miss. 1992)); *See also Martin v. Martin*, 566 So.2d 704, 707 (Miss. 1990). Where the record reflects an inability to pay and a financial disparity between parties, then this Court will find no error. *Brooks*, 652 So.2d at 1120 (*quoting Hammett*, at 830); *See also Powers v. Powers*, 568 So.2d 255 (Miss. 1990). The record must reflect the party's inability to pay the attorney's fees. *Brooks*, at 1120; *Benson v. Benson*, 608 So.2d 709, 712 (Miss. 1992).

John complains of the trial court's award of $1,500.00 in attorney's fees for two reasons: first, there was no proof of Vivian's inability to pay the fees.; secondly, there was no proof of the reasonableness of the fees.

In the case *sub judice*, Vivian pays $50.00 per month to her attorney. Vivian has already paid $850.00 of the $2,026.00 owed in attorney's fees. John contends that since Vivian has paid $50.00

per month, she has an ability to pay the attorney fees. Vivian stated at trial that she was unable to pay her attorney's fees. Of course, a mere statement at trial may not reflect a party's ability to pay or not pay attorney's fees. However, the record reflects that Vivian's expenses exceed her monthly income.

John contends that Vivian has an ability to pay attorney's fees in light of the award of alimony. Such reasoning seems suspect because once alimony is awarded, the awarded party clearly has a better ability to pay than he or she did prior to the judgement. Regardless of this Court's opinion as to such a proposition, the award of alimony in the case *sub judice* does not increase Vivian's financial situation to such a standard that she may pay the attorney's fees. Recall, Vivian was awarded $200.00 a month in alimony.[1] The award of alimony does not rise to the level for this Court to determine that Vivian now has an ability to pay the attorney's fees. The Chancellor did not abuse his discretion when awarding Vivian attorney's fees.

John also contends that Vivian did not prove the reasonableness of attorney's fees. However, Vivian put into evidence a succinct and detailed list of all attorney expenses. The attorney's fees amounted to $2,026.00. The Chancellor awarded $1,500.00 in fees. Because Vivian produced a detailed list determining fees, and the amount awarded, we can not conclude that the Chancellor abused his discretion.

## IV.

### WHETHER THE COURT ERRED IN DETERMINING THE PROPERTY SETTLEMENT?

John contends that the chancellor had inadequate facts to determine the property settlement. Specifically, the property settlement concerns the distribution of the jointly owned automobile. The chancellor awarded John the automobile, but ordered John to pay Vivian $150.00 per month until $4500.00 is paid, for a good used car. John claims that the chancellor had insufficient evidence to determine that the car was worth $4500.00.

The facts before the chancellor were that the automobile was a 1988 Oldsmobile Cutlass Sierra with 160,000 miles, that the automobile was jointly owned by both parties, and that John required the automobile for work. John claims that the chancellor could not have made a proper determination of the worth of the vehicle without at least a NADA value. John further contends that the chancellor could have ordered the vehicle sold with the parties splitting the proceeds.

In *Draper v. Draper*, 627 So. 2d 302, 305 (Miss. 1993), we stated:

> It is well-established by this Court that the chancery court has the authority to order an equitable division of property that was accumulated through the joint efforts and contributions of the parties. *Brown v. Brown*, 574 So.2d 688, 690 (Miss. 1990). However, there is no automatic right to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court. *Id.*, at 691.

The Chancellor did not determine the automobile's exact value. The Chancellor awarded the automobile to John since John's employment requires that he have one. The Chancellor awarded the two and half year monthly payments of $150.00 as Vivian's equity in the car and as an opportunity to

pay for an automobile. In light of the circumstances, we do not conclude that the Chancellor abused his discretion or manifestly erred.

## V.

## LUMP SUM AND PERIODIC ALIMONY

Whether to award alimony and the amount awarded are decisions largely within the discretion of the chancellor. *Creekmore v. Creekmore*, 651 So.2d 513, 517 (Miss. 1995); *Cherry v. Cherry*, 593 So.2d 13, 19 (Miss. 1991). We "will not disturb the chancellor's decision on alimony on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." *Creekmore*, 651 So.2d at 517 (*citing McNally v. McNally*, 516 So.2d 499, 501 (Miss. 1987)).

## A.

## WHETHER THE COURT ERRED IN AWARDING PERIODIC ALIMONY?

This Court considers nine factors when reviewing an award or denial of periodic alimony:

> 1) the health of the husband and his earning capacity;

> 2) the health of the wife and her earning capacity;

> 3) the entire sources of income of both parties;

> 4) the reasonable needs of the wife;

> 5) the reasonable needs of the child;

> 6) the necessary living expenses of the husband;

> 7) the estimated amount of income taxes the respective parties must pay on their incomes;

> 8) the fact that the wife has the free use of the home, furnishing and automobile, and;

> 9) such other facts and circumstances bearing on the subject that might be shown by the evidence.

*Tilley v. Tilley*, 610 So.2d 348, 353 (Miss. 1992); *Powers v. Powers*, 568 So.2d 225, 259 (Miss. 1990); *Brabham v. Brabham*, 226 Miss. 165, 176, 84 So.2d 147, 152 (1955). Furthermore, "The chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living." *Brendel v. Brendel*, 566 So.2d 1269, 1272 (Miss. 1990)(*citing Massey v. Massey*, 475 So.2d 802, 803 (Miss. 1985)).

Both John and Vivian are in good health. John listed $2,000.00 as his gross income each month. John's income is based solely on commission, and he has worked for his current employer less than two years. The chancellor could properly conclude that John's commission would increase as he builds a larger clientele, thereby bringing in a larger income. Vivian has worked as a secretary all her life and listed $ 1,233.24 as her gross monthly income. As a secretary, her chances of an increased (and sizeable) monthly income are much less likely than John. Neither party has an outside income

source.

John was awarded the car but ordered to pay Vivian $150.00 per month up to $4500.00 for a good used car.

Vivian's financial declaration sheet states that her expenses total $1,360.00, which is more than the $956.19 she earns after deductions. However, $325.00 of the expenses are listed for automobile expenses. The chancellor awarded her $150.00 per month up to $4,500.00 from John for automobile expenses. However, even deducting the $150.00 per month award and $244.00, which is approximately three-quarters of her listed automobile expenses, Vivian still comes up a tad short. John contends that Vivian lives rent free in her stepfather's house but Vivian listed $350.00 for rent in her expenses. However, while John has established that Vivian does in fact live in her stepfather's house, John has not shown that Vivian lives there rent free.

John listed $1,648.00 in expenses, which is less than his monthly income of $1,726.00 after deductions. Significant to John's expenses is that he lives with a woman. John stated that though they do pool some items and expenses, his expenses listed on the financial statement are based solely on his expenses. However, John pays the full rent of $345.00 for the apartment while his woman companion contributes nothing to rent. Also, John's food expense of $400.00, $100.00 less than Vivian, could be supplemented by pooling supplies with his roommate. The trial court determined that since his roommate is an able-body and employed, then she could help with expenses such as rent and household goods and food.

After applying all the factors, we conclude that awarding periodic alimony of $200.00 was proper and not excessive in light of the circumstances. While Vivian does not make enough from work to pay all her expenses, John has the ability to pay all his expenses and still have some money left over.

## B.

## WHETHER THE COURT PROPERLY AWARDED VIVIAN LUMP SUM ALIMONY?

The Chancellor ordered John to pay Vivian $10,000.00 in lump sum alimony, to be paid in yearly installments of $1,000.00. When addressing lump sum alimony, we consider several factors:

1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business.

2) A long marriage.

3) Where recipient spouse has no separate income or the separate estate is meager by comparison.

4) Without the lump sum award the receiving spouse would lack any financial security.

*Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss. 1988)(citations omitted). The chancellor correctly found that the marriage was a long marriage. However, the most significant factor is the disparity of the separate estates. *Cheatham*, 537 So.2d at 438. In the case *sub judice*, neither party has an estate. During the course of their marriage, there was apparently no accumulation of wealth.

Instead, the parties used all that they made in their everyday living expenses. The only disparity in estates is the monthly income each party makes. Since neither party has an estate, any difference in monthly income should be reflected in periodic alimony and not in lump sum alimony. Money has never been in surplus in this marriage. As will be discussed next, John does not have the ability to pay all that the Chancellor has awarded Vivian. In light of the fact that money is a shortage for both parties, we uphold the award of periodic alimony and over-rule the award of lump sum alimony.

## VI.

### WHETHER THE CHANCELLOR PUNISHED THE ADULTEROUS PARTY?

John contends that the chancellor punished him for his adulterous relationship by awarding Vivian alimony, and/or that the chancellor awarded too much alimony.

In the case *sub judice*, the Chancellor determined that John pay alimony. "It appears to the Court that Mr. Stegbauer is involved in a situation where he has replaced a wife with a lover, and while he is partially supporting this lady friend in violation of his obligation to support his wife of a long-term marriage as defined in *Cleveland v. Cleveland*, this court is of the opinion that he should pay periodic alimony and permanent lump sum alimony." The Chancellor stated that he determined the equitable distribution based on the neutral, non-punishable principles found in *Chamblee*, *infra*, and based alimony on the ability to pay since John was at least partially supporting his lady friend.

*Chamblee v. Chamblee*, 637 So.2d 850, 863 (Miss. 1994), stated that this Court has been moving away from using divorce proceedings to punish the person adjudged at fault and using a more fair and equitable attitude towards the division of marital property. *Tilley*, 610 So.2d at 354, stated that alimony should not be used as punishment. In *Tilley*, the chancellor ordered the husband to pay $11,038.34 per month and his monthly income was only $7,306.00. Therefore, we determined that the chancellor was either punishing the husband for the grounds of divorce or ignored the resources. *Tilley*, at 354. In the case *sub judice*, the chancellor ordered John to pay $200 per month and his gross monthly income is $2,039.00. Therefore, John's contentions that the chancellor was punishing him is not well founded.

We have stated that when evaluating the equitable distribution and outcome of a divorce, "all awards should be considered together to determine that they are equitable and fair." *Brooks*, 652 So.2d at 1124 (*quoting Ferguson v. Ferguson*, 639 So.2d 921, 929 (Miss. 1994)). Estimating John's income at $19,512.00 and his yearly expenses at $16,800.00 (this figure reflects a deduction of $248.00 per month for his room-mate's half of the rent and her minimal contribution in household goods and food), John has $2,712.00 remaining. The Chancellor ordered John to pay Vivian $200.00 per month in periodic alimony equaling $2,400.00 and $1,000.00 per year in lump sum alimony for ten years. John was also ordered to pay $1500.00 in attorneys fees and $150.00 per month for two and half years for the equitable division of the automobile. Since John was awarded the automobile, the $150.00 per month should not factor in the equation. The combined periodic and lump sum alimony alone exceeds John's yearly adjusted income after expenses. However, Vivian's income is surpassed by her expenses, a problem John does not have until applying the Chancellor's order.

We conclude that since John does make more money than Vivian, John should pay periodic alimony. As stated previously, since neither party together or separately accumulated an estate, and since John

would be unable to pay the lump sum awarded, the lump sum alimony of $10,000.00 for ten years is reversed.

In conclusion, we can not conclude that the Chancellor abused his discretion or manifestly erred. We find that the Chancellor did not attempt to punish John for his adulterous conduct. In light of the financial status of both parties, and the limited financial assets available, the lump sum alimony is reversed since John does not have an ability to pay all that the Chancellor ordered. However, the equitable distribution and award of attorney's fees and periodic alimony are upheld.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, P.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., AND McRAE, J., CONCUR IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**

1. Vivian was also awarded $1,000.00 per year for ten years, in alimony. However, we reverse the $10,000.00 award, see *infra* V.B.