794 So.2d 13 (2001)
Michael Allen HARDY, et ux.
v.
BLOOD SYSTEMS, INC., et al.
No. 2001-0134.
Court of Appeal of Louisiana, Third Circuit.
May 2, 2001.
Rehearing Denied June 6, 2001.
*15 Amos H. Davis, Smith & Davis, Baton Rouge, LA; John Edmund McElligott Jr., Davidson, Meaux, etc., Lafayette, LA, Counsels for Plaintiff/Appellants Michael Allen Hardy, Heather Hardy, Melissa Marie Hardy, Benjamin William Hardy.
Nicholas Gachassin Jr., Gachassin & Hunter, Lafayette, LA; Thomas H. Morrow, Lafayette, LA, Counsels for Defendants/Appellees Lafayette General Medical Center.
Nairda Teresa Colon, New Orleans, LA, Counsel for Defendants/Appellees Blood Systems, Inc.
Peter Elliot Sperling, New Orleans, LA, Counsel for Defendants/Appellees Blood Systems, Inc., United Blood Service.
Court composed of COOKS, DECUIR, and GREMILLION, Judges.
GREMILLION, Judge.
In this case, the plaintiffs, Michael and Heather Hardy, individually and on behalf of their minor children, Melissa and Benjamin, appeal the judgment in favor of the defendants, Blood Systems, Inc., d/b/a United Blood Services (Blood Systems), and Lafayette General Medical Center (Lafayette General), granting their exceptions of prescription. For the following reasons, we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND
The Hardys filed suit on February 11, 1999, claiming that blood transfusions administered by Lafayette General with blood supplied by Blood Systems in either 1974 or 1984 resulted in Michael contracting the Hepatitis C virus.[1] Both Lafayette General and Blood Systems filed exceptions of prescription based on the three-year peremptive period within which to file a medical malpractice action found in La. R.S. 9:5628. The exceptions were granted in favor of both Lafayette General and Blood Systems. The trial court also found that the Hardys failed to prove that La. R.S. 9:5628 is unconstitutional under the equal protection clause and open access to courts clause of the La. Const. art. I, §§ 3 and 22, because they presented no evidence suggesting that La.R.S. 9:5628 does not further a legitimate state interest.
The Hardys now appeal and assign as error:

*16 (1) The trial court's application of the three-year peremptive period found in La.R.S. 9:5628 to Blood Systems and Lafayette General as they were not qualified health care providers in 1984.
(2) The trial court's finding that Michael was not discriminated upon on the basis of a classification, i.e., physical condition.
(3) The trial court's finding that La. R.S. 9:4528 is constitutional as applied to Michael.
(4) The trial court's granting of Blood Systems and Lafayette General's exception of prescription when they filed suit within one year of the discovery of Michael's Hepatitis C virus that was contracted from a blood transfusion sold and received at Lafayette General with blood supplied by Blood Systems.

LAW
Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99); 732 So.2d 699. If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, its decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law was made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).

QUALIFIED HEALTH CARE PROVIDER
On November 29, 1999, the trial court concluded that La.R.S. 9:5628 applied to the instant case. The Hardys argue that because Lafayette General and Blood Systems were not qualified health care providers under the act at the time of the transfusion, it is inapplicable to them and, thus, they are not limited by the three-year peremptive period. Both Lafayette General and Blood Systems stipulated that they were not qualified health care providers at that time. At the hearing, the trial court found that, even though Lafayette General and Blood Systems were not qualified health care providers at the time, they were both still protected by the statute's time limitation because of the provision set forth in La.R.S. 40:1299.41(D).
La.R.S. 40:1299.41 et seq. concerns medical malpractice actions and is commonly referred to as the Medical Malpractice Act (MMA). It was enacted in 1975 and various parts of it have been amended over the years. La.R.S. 40:1299.41(A)(8), entitled "Definitions and general applications" defines "Malpractice," as of 1976, to mean:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient .... and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines....
(Emphasis added).
La.R.S. 40:1299.41(A)(1), effective 1987, defines "Health care provider" as a "person... or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank." (Emphasis added).
La.R.S. 40:1299.41(A)(17), also effective in 1987, defines "Community blood center" as "any independent nonprofit nonhospital based facility which collects blood and blood products from donors primarily to *17 supply blood and blood components to other health care facilities."
Finally, La.R.S. 9:5628(A) was amended in 1990 to include the phrase "or community blood center or tissue bank as defined in R.S. 40:1299.41(A)." It states in part:
No action for damages for injury or death against any ... hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

(Emphasis added).
La.R.S. 40:1299.41(D), enacted pursuant to the original legislation in 1975, states:
A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part.
The Hardys argue that their claims are not subject to the MMA's special prescriptive period because Lafayette General and Blood Systems were not qualified health care providers at the time of the transfusions. They further argue that it would be illogical for non-qualified healthcare providers to take advantage of the act when it has been repeatedly held that plaintiffs do not get the benefit of interruption of prescription against non-qualified healthcare providers. Moreover, they cite the first sentence of La.R.S. 40:1299.41(D) for the proposition that Lafayette General and Blood Systems' liability is not based on any part of the act and, thus, they should not be subject to the special prescriptive period of La.R.S. 9:5628, enacted in conjunction with the MMA.
Blood Systems specifically points to a recent decision from the First Circuit, David v. Our Lady of the Lake, 01-0030 (La.App. 1 Cir. 2/9/01), an unpublished writ, where the court held in a one paragraph opinion that La.R.S. 9:5628 applied to a health care provider who was not qualified under the MMA. Thus, the plaintiff's claim was dismissed as prescribed. Because the writ was unpublished, we shall only look to it for guidance.
We first state that the confusion surrounding the MMA and its application is not unfounded. However, in our opinion, it is clear that, as of 1976, the legislature intended for health care providers' legal responsibility resulting from defects in blood to be governed by La.R.S. 9:5628, as it is defined under "medical malpractice." See Sonnier v. Opelousas Gen. Hosp., 95-1560 (La.App. 3 Cir. 5/8/96); 688 So.2d 1040. On the other hand, La.R.S. 40:1299.41(D) appears to completely preclude the application of the MMA to a non-qualified health care provider, except for the prescription issue, as it states that a "health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this part." The statute *18 goes on to list the exception regarding prescription.
The Louisiana Supreme Court, in Spradlin v. Acadia-St.Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00); 758 So.2d 116, 120 (footnotes omitted) (emphasis added), set forth some general provisions regarding the construction and application of the MMA:
In 1975, the Louisiana Legislature, in response to a perceived medical malpractice crisis, enacted the Medical Malpractice Act. Under the Act, a private health care provider, by taking specified steps, can become qualified for entitlement to certain limitations not available to other tort defendants. The primary limiting provisions available to private health care providers are the maximum amount of damages and the mandatory pre-suit review by a medical review panel, along with the special prescriptive and peremptive periods for malpractice actions provided by La.Rev. Stat. 9:5628.

Since all of the limiting provisions applicable to qualified health care providers are "special legislation in derogation of the rights of tort victims," these provisions are all strictly construed. Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). Moreover, these special provisions apply only to "malpractice," as defined in the Act, and any other liability of the health care provider is governed by general tort law.
We believe that the legislature intended this clause to mean that a "health care provider," who is not qualified, i.e., does not pay into the system, cannot avail itself of the liability caps and review procedure by the medical review panel. In our opinion, it does not preclude the application of the general definitions associated with the act. It merely does not afford a non-qualified health care provider the benefits associated with membership and payment into the Patient Compensation Fund (PCF). Simply because a party is not "qualified" does not change the inherent nature of the type of action as one for medical malpractice. La.R.S. 40:1299.41(D). A non-qualified health care provider still commits "medical malpractice" when it commits an unintentional tort or breach of contract of the type described in La.R.S. 40:1299.41(A)(8).
Moreover, we find that La.R.S. 9:5628 applies to non-qualified health care providers and qualified health care providers alike as the statute nowhere precludes its application. Thus, it follows, that a plaintiff has a medical malpractice action independent of whether or not the defendant is a "qualified" health care provider per La.R.S. 1299.41(A)(8).
Additionally, La.R.S. 40:1299.41(D), though poorly worded, was enacted specifically to state that, although a non-qualified health care provider cannot avail itself of the primary benefits of paying into the PCF (i.e., cap on damages and initial submission of claims to the medical review panel), it can still take advantage of the prescriptive period set forth in La.R.S. 9:5628.
Thus, we find that the Hardys' claim, as to Lafayette General, is indeed a "medical malpractice action" subject to the prescriptive period set forth in La.R.S. 9:5628, because a "hospital" was a "health care provider" at the time of the transfusion. Therefore, this assignment of error is without merit.
Alternatively, the Hardys suggest that La.R.S. 9:5628 cannot be applied to Blood Systems based upon the sale or administration of blood or blood products that took place before September 7, 1990, which is the date that "community blood center" was added to the list of enumerated *19 healthcare providers in La.R.S. 9:5628. Thus, they allege that Blood Systems cannot avail itself of the prescriptive period set forth in La.R.S. 9:5628. The Hardys cite Broussard v. Sears Roebuck and Co., 568 So.2d 225 (La.App. 3 Cir.1990), which essentially affirms their argument that the listing in La.R.S. 9:5628 is exclusive, not illustrative.
In Broussard, the plaintiff's medical malpractice action against her optometrist was dismissed by the trial court as prescribed under La.R.S. 9:5628. The trial court held that the listing in the statute was illustrative rather than exclusive. The plaintiff had been treated by an optometrist from February 1983 to September 1983 for complaints of vision problems. It was not until July 1987 that the plaintiff became aware that she had glaucoma, which she alleged defendant failed to diagnose in 1983. At the time plaintiff filed suit, the statute's three-year prescriptive period was only applicable to physicians, chiropractors, dentists, psychologists, and hospitals.
We held that the statute's interpretation must be limited to its plain wording, and that because "optometrist" was not listed in La.R.S. 9:5628 at the time plaintiff filed suit, the statute's prescriptive period was inapplicable. This result was reached despite the fact that under the MMA, the definition of a "health care provider" included "optometrist." This court held:
When a law is clear and free from ambiguity, the letter of it is not to be disregarded under the guise of interpretation or pursuing its spirit. Prescriptive statutes are strictly construed, and the facts of the case must bring the action clearly within the specific provision of the law sought to be applied. Moreover, the courts are bound to apply the law as it is written and it is for the legislature to amend the statute if it is inequitable.
In its present form, the prescriptive statute does not specifically include optometrists. Nor does the statute have a "catch-all phrase" such as "health care provider" to include optometrists. Rather it specifically covers only five health-care providers for medical malpractice actions. We glean from the history of the statute that the legislature deliberately extended this prescriptive protection to only those health-care providers which it deemed necessary.
Id. at 228 (citations omitted).
In relation to Blood Systems, we find that, although the Hardys' claim is based in medical malpractice, Blood Systems was not a "health care provider" as it was defined in 1984. It was not until 1987 that "community blood center" was added to the list of enumerated health care providers in La.R.S. 9:5628. Thus, the prescriptive period set forth in La.R.S. 9:5628 is inapplicable to the Hardys' claim against Blood Systems, and the general prescriptive period applicable to tort actions applies. La.Civ.Code art. 3492 sets forth the one-year prescriptive period for delictual actions. By virtue of the contra non valentum doctrine, a plaintiff has one year to file suit from the date he discovers or should have discovered the basis for his suit. Crier v. Whitecloud, 486 So.2d 713 (La.1986). Thus, the Hardys had one year from March 10, 1998, the day they were made aware of Michael's Hepatitis C infection, to file suit against Blood Systems. Since the Hardys filed suit on February 11, 1999, their claim against Blood Systems is timely, and the judgment of the trial court granting Blood Systems' exception of prescription is reversed.

CONSTITUTIONALITY OF LA.R.S. 9:5628
The Hardys argue that La.R.S. 9:5628 discriminates against Michael *20 based on his physical condition, thus, making its application to him unconstitutional. They urge that the statute's application is a violation of the equal protection of the laws guaranteed in La. Const. art. 1, § 3, and a violation of due process of law as guaranteed in La. Const. art. 1, § 22.[2] We recently addressed an identical claim of unconstitutionality based on the latency period of Hepatitis C in Trahan v. Our Lady of Lourdes Regional Medical Center, Inc., 00-1140 (La.App. 3 Cir. 1/31/01), 778 So.2d 1205. In Trahan, we felt constrained to follow the jurisprudence set forth in this state that La.R.S. 9:5628 is constitutional because it does not discriminate based on a physical condition. While we find the Hardys' arguments very persuasive, we must find that the statute's application to persons with diseases having latency periods exceeding three years is constitutional until the supreme court of this state rules otherwise or the legislature changes the law.
The Hardys strenuously argue that our reliance in Trahan on the decisions set forth in Crier, 496 So.2d 305 and Whitnell v. Silverman, 95-0112 (La.12/6/96); 686 So.2d 23 are erroneous. Thus, we undertake a review of these cases in order to dispel any notions that our findings in Trahan were based on faulty reasoning.
In Crier the supreme court held that the three-year limitation in which to bring a medical malpractice action did not violate the plaintiffs rights under the equal protection and due process clauses of the United States and Louisiana constitutions.
In 1978, the defendant doctor implanted a Harrington rod in the plaintiffs back in order to correct her scoliosis. In March 1982, plaintiff began experiencing severe back pain, and it was determined that the rod in her back was broken. Plaintiff filed suit within one year of this discovery, which was more than three years after the date it was implanted. Similar to the instant case, the plaintiff could not have known within the original three-year period that the rod would break. While we agree that these facts are not identical to those of the "latent disease" category, we do not find it so distinguishable as to merit our overruling the highest court of this state. Regardless of whether the plaintiffs delay was caused by a latent disease or an event that has not yet happened, the plaintiff could not have known that his or her cause of action existed before the end of the three-year period. Yet, the supreme court still held that the plaintiffs due process rights were not violated because a plaintiff who does not file suit within the three-year period has no cause of action and, therefore, no vested property right in pursuing the suit. Additionally, the plaintiffs equal protection rights were not violated because La.R.S. 9:5628 equally affects all persons who undergo medical treatment since it provides that a medical malpractice action will be barred if it is not filed within the three-year period. The supreme court went on to say:
The statute is merely a legislative determination that three years is a reasonable period of time in which to assert a medical *21 malpractice claim. It does not create a classification that "disadvantages or discriminates against one class of individuals by reason of or because of their physical condition." Hence, the classification is outside the scope of art. 1, § 3. Therefore, the statute should be upheld unless plaintiff shows that it does not further an appropriate state interest. Since plaintiff offered no evidence to meet this burden, La.R.S. 9:5628 is presumed constitutional under art. 1, § 3 of our state constitution. Moreover, since plaintiff offered no evidence to show that the statute was not rationally related to a reasonable state interest, it is likewise presumed constitutional under the equal protection clause of the federal constitution. A remand to the district court to afford plaintiff the opportunity to present evidence to carry her burden would serve no useful purpose because of the minimal level of scrutiny involved and the apparent state interest furthered by the statute.
Crier, 496 So.2d at 311 (emphasis added) (footnotes omitted).
The supreme court also expressly stated that the doctrine of contra non valentum, an exception that precludes the running of prescription against a party unable to act, is inapplicable to medical malpractice claims. Id.
The Hardys strenuously argue that claims involving diseases with latency periods exceeding three years must be distinguished from Crier. However, we do not see the distinction. Just as the plaintiff in Crier could not have known within the three-year period that the Harrington rod in her back would break, Michael could not know that he had contracted the Hepatitis C virus.
In Whitnell, the plaintiff treated with several doctors from 1981 through 1984 for bladder and urinary tract problems. It was only in 1984 that she learned that she had bladder cancer, despite a 1980 pathology report that essentially revealed a pre-cancerous lesion. Throughout the four-year period, plaintiff continued to suffer from problems associated with the bladder cancer. The supreme court made clear in Whitnell, that its previous decision in Crier would not be overruled, as suggested by the appellate court. It also found that the plaintiff had experienced symptoms of the disease within the three-year period commencing in 1980 and, thus, could not be compared to those persons with diseases having latency periods in excess of three years. Moreover, it found that La.R.S. 9:5628 was constitutional as it applied to the plaintiff and her suit, filed in 1986, was time-barred by the statute. We are well aware that the facts in Whitnell can be distinguished from those presently before us. In a footnote, the supreme court stated, "A case with a lengthy latency period might call for our reexamination of the Crier decision on the constitutionality of Section 5628." Whitnell, 686 So.2d 23 at 33, n. 5. Until such time, we feel, in accordance with many of our colleagues, that it would be inappropriate for this court to declare La.R.S. 9:5628 unconstitutional as applied to those persons suffering from diseases with latency periods in excess of three years. Although we welcome the Hardys appeal of their case to the supreme court for a determination on this issue, we must find that a claim filed fourteen years after the treatment provided by Lafayette General is prescribed on its face under La.R.S. 9:5628.
Because we have found that the equal protection clause is not implicated, the burden of proof in challenging the statute rests with the plaintiff to prove that it furthers no state interest. No such evidence is evident from a review of the *22 record. Therefore, La.R.S. 9:5628 is presumed constitutional under the equal protection clause. Moreover, we will not remand to the trial court to allow the Hardys the opportunity to meet their evidentiary burden as it would be useless because of the "minimal level of scrutiny involved and the apparent state interest furthered by the statute." Crier, 496 So.2d at 311. Thus, we find that the exception of prescription was properly granted.
Finally, other plaintiffs have unsuccessfully challenged the constitutionality of La. R.S. 9:5628. In Neal v. Pendleton Memorial Methodist Hospital, 99-40 (La.App. 4 Cir. 4/21/99); 733 So.2d 698, writ denied, 99-1870 (La.10/8/99); 751 So.2d 221, a case with facts identical to this one, the Fourth Circuit rejected the trial court's denial of the defendant's exception of prescription. In Neal, the plaintiff complained that a 1981 blood transfusion infected her with Hepatitis C. She filed her complaint with the Patient Compensation Fund in November 1996. The trial court felt bound by the Crier decision and noted that the supreme court has yet to address the constitutionality of the statute. The Hardys argue that this case is distinguishable because the defendant provider was a qualified provider as evidenced by the plaintiff's filing with the Patient Compensation Fund. For the reasons stated above, however, we find this argument without merit.

CONCLUSION
Since La.R.S. 9:5628 applies to the Hardys' claim against Lafayette General Medical Center, the exception of prescription was properly granted. However, as to Blood Systems Incorporated, d/b/a United Blood Services, La.R.S. 9:5628 is inapplicable and the Hardys' claim is instead governed by La.Civ.Code art. 3492. Because the Hardys' have timely instituted suit against Blood Systems within the one-year period, they may proceed with their claim. La.R.S. 9:5628 is not unconstitutional as it does not violate the equal protection clause or due process clause of the United States or the Louisiana Constitutions. Costs of this appeal are assessed equally to the plaintiffs-appellants, Michael and Heather Hardy, and the defendant-appellee, Blood Systems Incorporated, d/b/a United Blood Services.
AFFIRMED IN PART AND REVERSED IN PART.
COOKS, J., affirms in part, dissents in part, and would reverse that portion of the trial court's judgment granting the exception in favor of Lafayette General Medical Center.
NOTES
[1] The Hardys originally filed two separate lawsuits against the same defendants; one for the 1974 blood transfusion which was assigned to Division "C" of the Fifteenth Judicial District Court, and one for the 1984 blood transfusions in Division "F" of the same district court. The cases were subsequently consolidated upon motion of the defendants on February 23, 2000.
[2] La. Const. art. 1, § 3 states: No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for a crime.

La. Const. art. 1, § 22 states: All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.