686 So.2d 23 (1996)
Lorraine S. WHITNELL, Wife of/and James Whitnell
v.
Dr. Arthur SILVERMAN, et al.
Lorraine WHITNELL, Wife of/and James Whitnell
v.
Dr. Arthur SILVERMAN, Dr. John G. Menville, et al.
Nos. 95-C-0112, 95-C-0259.
Supreme Court of Louisiana.
December 6, 1996.
Dissenting Opinion December 16, 1996.
Rehearing Denied December 30, 1996.
*24 Richard P. Ieyoub, Attorney General, Charles T. Williams, Jr., John Elliott Baker, Blue Williams, Metairie, for Applicant.
Russ Michel Herman, Mark Reed Wolfe, Stephen Jay Herman, Charles Owen Taylor, Herman, Herman, Katz & Cotlar; Chester Arthur Fleming, III, Terry Beth Deffes, Charles Archibald Boggs, Robert Irby Baudouin, Boggs, Loehn & Rodrique; Harold Ashton Thomas, Thomas, Hayes, Beahm & Buckley; Darryl Joseph Foster, Lemle Kelleher; Robert J. Conrad, Adams & Reese, New Orleans, for Respondent.
Robert John Conrad, Jr., Jeffrey Edward Richardson, New Orleans, for Louisiana State Medical Society Amicus Curiae.
Edward Paige Sensenbrenner, Charles Fenner Gay, Jr., New Orleans, Counsel for Ochsner Clinic and Ochsner Foundation Hospital Amicus Curiae.
Stewart Earl Niles, Jr., Bruce James Toppin, Michelle Anne Bourque, New Orleans, Counsel for LAMMICO Amicus Curiae.
Dissenting Opinion by Justice Lemmon December 16, 1996.
JOHNSON, Justice.[*]
We granted the State of Louisiana's writ of certiorari and ordered that the State's appeal be consolidated with Dr. Menville's appeal, to determine whether La.R.S. 9:5628 is unconstitutional as applied to plaintiffs' diagnosed disease which has a latency period of less than three years.[2] The trial court found that the statute was constitutional as applied to plaintiff, whose disease had manifested itself within the three-year statutory period. The court further concluded that applying the statute to an illustrative list of nineteen diseases which have latency periods longer than three years, renders the statute unconstitutional. The court of appeal affirmed in part and reversed in part, finding that the statute was unconstitutional as applied to diseases with latency periods greater than and less than three years, and to hold otherwise would be discrimination based upon physical condition. For the reasons assigned, we conclude that La.R.S. 9:5628 is constitutional as applied to plaintiffs herein. Because the plaintiffs lacks standing to argue the constitutionality of the statute as applied to third parties in hypothetical situations, we further conclude that the lower courts erred in determining *25 that La.R.S. 9:5628 is unconstitutional as applied to the illustrative list of nineteen diseases with latency periods longer than three years.

FACTS AND PROCEDURAL HISTORY
On May 5, 1980, Mrs. Lorraine Whitnell began treating with Dr. John G. Menville, a urologist, for bladder and urinary tract problems. During the course of her treatment, Dr. Menville admitted Mrs. Whitnell to Touro Infirmary for a cytoscope of her bladder. At trial, Mrs. Whitnell testified that subsequent to the cytoscope, Dr. Menville informed her that the test results were normal, and that he saw nothing wrong with her bladder. Mrs. Whitnell maintains that she reasonably believed she suffered from infection, and acted accordingly and reasonably. She continued experiencing problems, so she ceased treatment with Dr. Menville in July, 1980. Thereafter, in January, 1981, she began seeing Dr. Arthur Silverman for the same condition and for treatment of the same symptoms. She continued seeing Dr. Silverman until 1984.
On October 11, 1984, Dr. Silverman's partner, Dr. Ronald Swartz, examined Mrs. Whitnell and hospitalized her for tests and studies. The next day, Dr. Swartz informed Mrs. Whitnell of the results of a pathology report, which revealed that she had a malignant tumor in her bladder which required radiation treatment and removal of her bladder, appendix and reproductive organs. This surgery was performed on October 29, 1984. At the trial, Mrs. Whitnell testified that this was the first time a physician had informed her that she had a cancerous bladder.
On September 26, 1985, Mrs. Whitnell and her husband, James Whitnell filed a medical malpractice suit, naming Drs. Silverman and Schwartz as defendants. That lawsuit, which was later dismissed without prejudice on an exception of prematurity, failed to name Dr. Menville as a defendant. While the case was being considered by the medical review panel, Whitnell requested her complete medical record from Touro. From information contained in these records, Mrs. Whitnell learned of a 1980 pathology report from a biopsy of her bladder performed by Dr. Menville. The 1980 pathology report revealed that Mrs. Whitnell had "squamous metaplasia, with focal moderate to marked dysplasia" or cystistcystica. Plaintiffs assert that this was the first time they learned of the 1980 pathology report, which essentially revealed the presence of a precancerous lesion on Mrs. Whitnell's bladder. Plaintiffs further allege that the 1980 pathology report gave a microscopic description which was compatible with a diagnosis which could be interpreted as carcinoma in situ of the bladder or a precancerous lesion which had a high likelihood of developing into cancer of the bladder, but that Dr. Menville failed to disclose this information.
Subsequent to the issuance of a medical panel opinion, plaintiffs filed the instant lawsuit on September 22, 1986, naming Drs. Silverman, Schwartz and Menville as solidary defendants, for the alleged misdiagnosis of her bladder cancer. Dr. Menville filed an exception of prescription on the basis that plaintiffs' action was filed after the three-year statutory limitation as provided in La. R.S. 9:5628. The trial court sustained Dr. Menville's exception of prescription and dismissed plaintiffs' action against defendant. The court of appeal affirmed.[3] This Court granted writs to determine whether prescription was interrupted by Dr. Menville's alleged knowledge of Mrs. Whitnell's danger of developing bladder cancer, and his failure to disclose that information to plaintiffs.[4] On review, we reversed the judgment of the court of appeal and remanded the case to the district court with instructions, allowing plaintiffs to amend their petition in accordance to La.C.C.P. art. 934.[5] We found that plaintiffs' claim against Dr. Menville had prescribed on the face of the petition. However, based upon plaintiffs' allegations that Dr. Menville failed to disclose vital information to Mrs. Whitnell, which raised the possibility that prescription may have been interrupted by the doctrine of contra non valentem, we *26 concluded that plaintiffs' claim should not be dismissed absent an opportunity to amend their petition to allege facts sufficient to overcome the grounds of the peremptory exception.
In accordance with this court's instructions, plaintiffs filed their First Supplemental and Amending Petition on March 28, 1989. After subsequently re-filing his exception of prescription, the trial court, once again, sustained Dr. Menville's exception and dismissed plaintiffs' claims against him on the grounds that Dr. Menville's alleged failure to disclose vital information to Mrs. Whitnell in regard to her condition was neither intentional nor fraudulent. The court of appeal affirmed, finding no error in the trial court's ruling.[6]
On writ of review, we granted in part and denied in part.[7] Although we agreed that the trial court correctly concluded that the doctor did not prevent the timely filing of plaintiffs' action intentionally, fraudulently, or by ill practice, we remanded the case to the trial court for an evidentiary hearing and ruling on whether La.R.S. 9:5628 is unconstitutional. Pursuant to this Court's order, the trial court conducted a Sibley hearing on the constitutionality of La.R.S. 9:5628, and concluded that the statute, as applied to plaintiffs, was constitutional. The trial court further concluded that "in order for R.S. 9:5628 to be unconstitutional for a particular plaintiff, the plaintiff must have a disease that was not diagnosed by the alleged malpracticing doctor and that [sic] the plaintiff experienced no symptoms that would put the plaintiff on notice that the plaintiff had a disease; in addition, the disease would have to be one of a [sic] serious, life threatening nature, such that the delay in treatment causes death or a very substantial impairment of the plaintiff's life." In its Reasons for Judgment, the trial court also noted that no medical malpractice insurance crisis existed in 1975 when R.S. 9:5628 was passed.
In accordance with Article V, § 5(D) of the Louisiana Constitution, the State of Louisiana appealed the constitutional issue directly to this Court. We granted writs and remanded the matter to the court of appeal to decide under its appellate jurisdiction.[8] On appeal, the Fourth Circuit affirmed in part and reversed in part.[9] The court of appeal agreed that the statute was unconstitutional as applied to causes of actions and damages caused by diseases with a latency period of over three years; however, the court found that La.R.S. 9:5628 is also unconstitutional as applied to plaintiffs herein under Louisiana Constitution Article 1 § 3. The court concurred with the trial court's reasons that no medical malpractice insurance crisis existed warranting the Louisiana Medical Malpractice Act under La.R.S. 40:1299.41 et seq., and suggested that it would overrule Crier v. Whitecloud, 496 So.2d 305 (La.1986) if it had the power to do so. The court of appeal conceded however, that it lacked the power to overturn a ruling by this court.
Defendant, Dr. Arthur Silverman, appeals from that judgment, arguing: 1) the lower court erred in finding that La.R.S. 9:5628 is unconstitutional as applied to Lorraine Whitnell; 2) the lower court erred in finding that La.R.S. 9:5628 is unconstitutional as applied to hypothetical plaintiffs; 3) the lower court erred in its factual finding that no medical malpractice insurance crisis existed in 1975; and 4) the lower court erred in finding that Crier v. Whitecloud should be overruled. The State of Louisiana, in maintaining that the statute is constitutional, also appealed to this Court raising similar specifications of error as those raised by defendant, Dr. Silverman.

LAW AND DISCUSSION
Because the court of appeal's opinion unequivocally states that this Court's opinion in Crier, supra, deviates from our opinion in Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), we are obliged to discuss the clear distinctions *27 between both cases for our readers and more pointedly, the appellate court's review.
In Sibley, this Court was challenged to interpret, among other issues, whether the statutory malpractice judgment limitation under La.R.S. 40:1299.39 violated equal protection of the laws based upon physical condition.[10] This matter, which was decided on rehearing, overruled our original judgment in Sibley (I).[11] The majority concluded that the federal three-tier system of constitutional scrutiny was an inappropriate model for the interpretation and application of our State's equal protection laws. We determined that Article I, Section 3 of the 1974 Louisiana Constitution necessitates that: (1) A statute shall be repudiated completely if it classifies individuals by race or religious belief; (2) A statute's enforcement shall be refused absent a showing that the classification has a reasonable basis when the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations; and (3) A statute shall be rejected when the law classifies on any other basis, and a member of the disadvantaged class shows that it does not suitably further any appropriate state interest. Based upon the facts and circumstances presented before us in this particular case, we found that the statutory limitation against a malpractice judgment in excess of $500,000.00 classifies individuals because of their physical condition. We explained as follows:
The law on its face is designed to impose different burdens on different classes of persons according to the magnitude of damage to their physical condition. The statute creates two classes: one, a group of malpractice victims each of whom has suffered damage that would oblige a defendant under our basic law to repair it by paying in excess of 500,000 dollars; another, a class consisting of victims whose damages would not require an award over this amount to make individual reparation. Victims in the former class are prevented from recovering for all their damage, while those in the latter class are allowed full recovery. Damage to the physical condition of each malpractice victim is the primary element of his damage and a primary cause of his being assigned to one of the two classes. Thus, the statutory disadvantages or discriminates against one class of individuals by reason of or because of their physical condition.
Sibley (II) at 1108, 1109. We remanded this case to the court of appeal, which ultimately remanded it to the trial court for an evidentiary hearing to determine whether this legislative classification substantially furthered a legitimate state purpose. See Sibley v. Board of Supervisors of Louisiana State University, 490 So.2d 307 (La.App. 1st Cir. 1986). Prior to judicial determination of whether the $500,000.00 malpractice judgment limitation was enacted in furtherance of a legitimate state purpose, what the Louisiana Legislature perceived to be a malpractice insurance crisis, the parties settled this case.
In Crier, this Court was asked to determine whether the three-year prescriptive period on medical malpractice claims pursuant to La.R.S. 9:5628 violated plaintiff's right to due process, open access to courts, and particularly, plaintiff's rights under the equal protection clauses of the Federal and State Constitutions. Crier, which was decided on rehearing, followed the analogy of Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986), insofar as this court's interpretation of La.R.S. 9:5628. We concluded that La.R.S. 9:5628 is a prescriptive statute with one qualification, that is, that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission or neglect. Crier v. Whitecloud, at 307.
With regard to equal protection, since it is the underlining issue before this Court, we determined in Crier that La.R.S. 9:5628 does not discriminate on the basis of severity. Instead, it affects every person who seeks medical treatment equally. It provides notice that malpractice claims will be barred if *28 they are not filed within three years from the date of the alleged act, omission or neglect. We concluded that the three-year prescriptive period does not create a classification that disadvantages or discriminates against one class of individuals by reason of, or because of their physical condition as did La.R.S. 40:1299.39, the $500,000.00 medical judgment limitation. Thus, we determined that the statute should be upheld absent a showing by plaintiff that the statute failed to further an appropriate state interest. Id. at 311.
Clearly, there is a distinction between this Court's rationale in Sibley in comparison to our reasoning in Crier. The most obvious distinction, which the appellate court failed to appreciate, is that in Sibley, we examined whether La.R.S. 40:1299.39 of the Medical Malpractice Act, the statutory malpractice judgment limitation, violated plaintiff's equal protection under the laws, while in Crier we determined whether equal protection of the laws was violated by the three-year statutory limitations on medical malpractice claims under La.R.S. 9:5628. These two cases are distinct. Therefore, we disagree with the court of appeal's finding that Crier is a deviation from Sibley. We further disagree with the court of appeal's finding that Crier should be overruled.

A. Equal Protection
Regarding the case at hand, we first consider the question of whether the court of appeal erred in finding that La.R.S. 9:5628 is unconstitutional as applied to Mrs. Whitnell. The court of appeal found that the enforcement of La.R.S. 9:5628 denies Mrs. Whitnell her constitutional right to equal protection of the laws, thereby contravening Article I Section 3 of the Louisiana Constitution. This Louisiana constitutional provision states the following:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition [emphasis added], or political ideas or affiliations.
The court of appeal determined that La.R.S. 9:5628 is violative of Louisiana Constitutional Article I, Section 3, in that it unreasonably discriminates against Mrs. Whitnell on the basis of physical condition, thereby creating a classification prohibited by the Louisiana Constitution. To support its position, the court of appeal noted the testimony of Dr. Stuart Hoffman, who provided an illustrative list of 19 diseases with latency periods in excess of three years. The list of the 19 diseases with latency periods in excess of three years consisted of the following:
1. Carcinoma of the cervixin situpap smear
2. Mammographic evidence of breast carcinomanon-palpable
3. Familial hypolipidemia
4. Asymptomatic coronary atherosclerosis
5. Early stage multiple myeloma
6. Von Willbrand's disease
7. Leukoplakia
8. Colon polyps
9. Malignant melanoma behind ear
10. Aneurysmthoracic aortacerebral artery
11. Early stage ovarian carcinoma
12. Chronic active hepatitis
13. First degree heart block
14. Second degree heart block
15. Petit mal seizures
16. Congenital absence of the spleen
17. Pernicious anemia
18. Gout
19. Blood Transfusion Acquired AIDS
Mrs. Whitnell suffered bladder and urinary tract problems. As evidenced by the above indicated illustrative list, Mrs. Whitnell's condition was not included among the diseases which purportedly have latency periods in excess of three years. Neither did Mrs. Whitnell posit or present any evidence to suggest that her medical condition had a latency period in excess of three years. On the contrary, the evidence clearly reveals that Mrs. Whitnell experienced symptoms of *29 her medical problems well within the three-year statutory prescriptive period. The facts reveal that she visited Dr. Menville's office for bladder problems from May, 1980 until July, 1980. Because her bladder problems persisted, she began seeing Dr. Silverman for the same condition in January, 1981, and continued her visits with him until 1984. Despite her continued bladder problems within the first year after her last visit with Dr. Menville, Mrs. Whitnell failed to file suit naming Dr. Menville as a defendant until 1986. Therefore, we find that La.R.S. 9:5628 is constitutional as applied to Mrs. Whitnell and the facts and circumstances in this particular case.
Because the La.R.S. 9:5628 is constitutional as applied to Mrs. Whitnell, and because Mrs. Whitnell's medical condition is not included among the diseases with latency periods in excess of three years, the court further finds that the lower courts erred in finding that the statute is unconstitutional as applied to individuals with diseases which have latency periods in excess of three years. The United States Supreme Court has consistently held that a party has standing to challenge the constitutionality of a statute only to the extent that the statute adversely affects his own rights. County of Ulster v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); See also, Sedler, "Standing to Assert Constitutional Jus Tertii in the Supreme Court", 71 Yale L.J. 599 (1962). This Court has also consistently made identical findings. See, State v. Turner, 392 So.2d 436 (La.1980) rehearing denied; Baehr, et al. v. City of Lake Charles, 387 So.2d 1160 (La.1980). As a general rule, if there exists no constitutional defect in the application of a statute to a litigant, such litigant has no standing to raise constitutional challenges to the application of the statute to third parties in hypothetical situations. United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960);[12]County of Ulster v. Allen; Broadrick v. Oklahoma; State v. Turner; Baehr v. City of Lake Charles. Essentially, a litigant may only assert his or her own constitutional rights, and should be denied standing when he or she seeks to assert and vindicate the property rights of third parties. McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Sherman v. Cabildo Construction Company, 490 So.2d 1386 (La.1986). Even if we held La.R.S. 9:5628 unconstitutional, we could not grant any relief to Mrs. Whitnell. Accordingly, we hold that Mrs. Whitnell has no standing to challenge the constitutionality of La.R.S. 9:5628 in its application to individuals with diseases characterized by latency periods in excess of three years. We also hold that the lower court erred in holding that La.R.S. 9:5628 is unconstitutional as applied to hypothetical third parties with diseases with latency periods in excess of three years, because Louisiana courts are without power to render judgments over moot and abstract propositions. See, Church Point Wholesale Beverage v. Tarver, 614 So.2d 697 (La.1993).[13] We further hold that the trial court erred in admitting into evidence Dr. Stuart Hoffman's testimony regarding the list of diseases with latency periods in excess of three years, for such evidence was irrelevant in this case.
Consistent with the Court's finding that Mrs. Whitnell has no standing to assert constitutional attacks for third parties with diseases with latency periods in excess of three years, the court further finds that Mrs. Whitnell has no foundation or standing to raise the equal protection challenge to La. R.S. 9:5628 on the basis that it discriminates on the basis of physical condition. Equal *30 protection of the laws provides that persons similarly situated receive like treatment. Sherman v. Cabildo Construction Co., 490 So.2d 1386, 1389 (La.1986). Accordingly, to raise a valid equal protection challenge, Mrs. Whitnell must show that application of La. R.S. 9:5628 treats her differently from other individuals similarly situated to her, i.e., individuals with diseases with latency periods less than three years. In this case, the evidence clearly shows that Mrs. Whitnell is being treated as all other individuals with diseases with latency periods less than three years. For reasons provided hereinabove demonstrating Mrs. Whitnell's lack of standing to make challenges for hypothetical third parties, it would be improper and useless to compare Mrs. Whitnell's physical condition to individuals with diseases with latency periods in excess of three years. Thus, we conclude that Mrs. Whitnell has failed to show that La.R.S. 9:5628 fails to treat persons similarly situated to her situation differently, and that accordingly, she is not afforded the equal protection constitutional challenge to La.R.S. 9:5628.
Because the court finds that La.R.S. 9:5628 does not classify individuals on the basis of physical condition under the facts of this particular case, there is no need to further examine the facts of this case in light of the equal protection analysis espoused by this Court in Sibley.[14] At a bare minimum, a showing of a "classification" must be made prior to addressing whether or not La.R.S., 9:5628 is primed by "an appropriate governmental interest suitably furthered." See Sibley. Additionally, it is incumbent upon one attacking the constitutionality of a statute to show that he or she is within a class of individuals disadvantaged by the statute. See Sibley at 1107. Mrs. Whitnell has failed to show that she fits within a class of individuals disadvantaged by a statutory classification. Mrs. Whitnell further failed to show that she met the criteria of any of the situations which trigger an equal protection analysis.[15] Thus, the Court does not have to explore the issue of whether or not there was an actual medical malpractice insurance crisis which precipitated the enactment of La.R.S. 9:5628.[16] Such a discussion under the particular facts of this case would merely amount to an advisory opinion, which is not only disfavored by Louisiana courts,[17] but which also has no bearing whatsoever on the outcome of this case since it is unnecessary to show "an appropriate government interest suitably furthered" by the statute. Moreover, this finding conforms to the long-standing judicial principle that courts will not consider constitutional challenges unless necessary to the resolution of a dispute. Benson & Gold Chevrolet v. La Motor Vehicle Commission, 403 So.2d 13, 23 (La.1981).

B. Access to the Courts
Mrs. Whitnell also challenges the constitutionality of La.R.S. 9:5628 on the basis that its application deprives her of the constitutional right to access to the courts. Article I, Section 22 of the Louisiana Constitution of 1974 provides:

*31 All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
As this Court determined in Crier v. Whitecloud, the constitutional guarantee of access to courts and a remedy for injuries does not warrant a remedy for every single injury. In Crier v. Whitecloud, this Court examined the historical background of the Article I, Section 22 of the Louisiana Constitution and concluded that in adopting this constitutional article, the Constitutional Convention did not intend to limit the legislature's ability to restrict causes of action or to bar the Legislature from creating various areas of statutory immunity from suit.[18] The Court further acknowledged that the establishment of statutes of limitations are within the scope of legislative authority, and that enactment of such does not eliminate the remedy for a civil wrong. The Legislature essentially makes a legislative determination that after a certain period of time, no cause of action can arise. Moreover, "[w]here access to the judicial process is not essential to the exercise of a fundamental constitutional right, the legislature is free to allocate access to the judicial machinery on any system or classification which is not arbitrary." Crier (citing Bazley v. Tortorich, 397 So.2d 475 (La.1981)).
In the case at hand, this court has already determined that Mrs. Whitnell is not part of a class disadvantaged by the enforcement of La.R.S. 9:5628, and further, that the statute is constitutional as applied to her under the facts in this case. The court further finds that symptoms of Mrs. Whitnell's condition were manifested long before the expiration of the statutory three-year prescriptive period. The court finds her delay in filing suit against Dr. Menville unreasonable, when she was symptomatic well within six months after her last visit with him. Under these circumstances, Mrs. Whitnell is afforded no more consideration or protection than other tort or medical malpractice victims subject to the statutory prescriptive periods promulgated by the Legislature. Thus, the court finds that La.R.S. 9:5628 does not unconstitutionally deprive Mrs. Whitnell of access to the courts.
Finally, the court notes that in this case, there exists no facts which should interrupt the running of prescription. This court has already determined that the Dr. Menville did not intentionally, fraudulently, or by ill practice, prevent the timely filing of Mrs. Whitnell's action, so as to invoke application of the doctrine of contra non valentem. See, Whitnell v. Silverman, 598 So.2d 345 (La. 1992). Hence, the court finds no basis to rule La.R.S. 9:5628 unconstitutional in its application, in any respect, under the facts in this case. Until we are satisfied that the facts of a particular case warrant a finding that the statute is unconstitutional in its application, we must obey the legislation. See, Louisiana Power & Light Co. v. Lasseigne, 240 So.2d 707 (La.1970).

DECREE
For the foregoing reasons, we reverse the judgment of the trial court, as affirmed by the court of appeal, insofar as it declared La.R.S. 9:5628 unconstitutional as to hypothetical third parties with diseases characterized by latency periods longer than three years. We reverse the court of appeal's ruling that La.R.S. 9:5628 is unconstitutional as applied to the plaintiffs herein, and reinstate the trial court's finding that the statute is constitutional in its application to plaintiff. We also reverse the court of appeal's ruling that there existed no medical malpractice insurance crisis which precipitated the enactment of La.R.S. 9:5628, for the reason that it was improper for the court of appeal to apply the "appropriate governmental interest suitably furthered" standard under the facts in this particular case.
REVERSED.
LEMMON, J., dissents and assigns reasons.
KIMBALL, J., concurs and assigns reasons.
*32 YELVERTON and WATSON, JJ., dissent believing Mrs. Whitnell did not know her condition because of concealment by the doctor.
KIMBALL, Judge, concurring.
This Court previously held in this case that plaintiffs' "claim against Dr. Menville [for negligence] is prescribed on the face of the petition and that there are no grounds for finding that prescription on the claim set forth in the petition has been interrupted..." see Whitnell v. Menville, 540 So.2d 304, 309 (La.1989), and, regarding plaintiffs' claim in an amended petition for failure to disclose, "[t]he trial court correctly concluded that the doctor did not prevent timely filing of plaintiff's action intentionally, fraudulently, or by ill practice." See Whitnell v. Menville, 598 So.2d 345 (La.1992). Upon remand to the trial court for a Sibley evidentiary hearing to determine whether La.R.S. 9:5628 is constitutional, the trial court made a factual finding that Mrs. Whitnell's condition was discoverable within the three year period contained in La.R.S. 9:5628.
Because there is no error in the trial court's factual determination that Mrs. Whitnell's condition was discoverable within the three year period provided by the statute and this court, applying the proper standard, see Hillman, Et Al. v. Akins, Et Al., 93-0631 (La. 1/14/94), 631 So.2d 1, has already determined there is no evidence to support application of the doctrine of contra non valentem, Mrs. Whitnell's claim is prescribed under the statute. Furthermore, as Mrs. Whitnell's condition was in fact discoverable within the three year period contained in the statute, there is no need to reach or decide any constitutional issue in this case.
LEMMON, Judge, dissenting.
Latency periods of various medical conditions have little to do with this case. Plaintiff was allegedly damaged by Dr. Menville, not because of some condition he caused that did not manifest itself immediately, but because he either failed to diagnose a condition that had manifested itself or, having discovered a cancerous or pre-cancerous condition, failed to inform plaintiff of the condition at a time when treatment was critical.
This case turns on whether La.Rev.Stat. 9:5628 precludes the application of either the third or the fourth category of the doctrine of contra non valentem agere nulla currit praescripto[1] to suspend or to prevent commencement of Section 5628's three-year period of limitation. The initial inquiry is into the interrelationship between Section 5628 and the doctrine of contra non valentem. La.Rev.Stat. 9:5628 and Contra Non Valentem
La.Rev.Stat. 9:5628 is multi-faceted, providing three separate periods of limitation. First, Section 5628 provides the general rule of prescription in medical malpractice cases. Such an action generally prescribes one year from the date of the alleged act, omission or neglect. Second, Section 5628 provides an exception to the general rule by incorporating the discovery rule of the fourth category of contra non valentem into those cases in which the cause of action is not immediately knowable. Such actions prescribe one year from the date of discovery of the alleged act, omission or neglect.[2] Finally, in cases otherwise falling within the discovery rule, Section 5628 provides that the claim "must be filed at the latest within three years from the date of the alleged act, omission or neglect."[3] Since the third period of limitation in Section 5628 precludes application of the discovery rule if *33 suit is not filed within three years, Section 5628, if constitutional, prevents application of the fourth category of contra non valentem after three years.[4]See Chaney v. State Through Dept. of Health and Human Resources, 432 So.2d 256 (La.1983).

Fourth Category of Contra Non Valentem
This court, when presented this case for the first time in Whitnell v. Menville, 540 So.2d 304 (La.1989), held that plaintiff's claim against Dr. Menville for negligent misdiagnosis of plaintiff's condition was prescribed or perempted on the face of the petition, since such conduct falls under the discovery rule of the fourth category of contra non valentem and Section 5628 restricts the applicability of that discovery rule to three years. However, recognizing that prescription or peremption might have been suspended if Dr. Menville correctly diagnosed plaintiff's condition and with knowledge of the condition failed to disclose it, this court remanded the case to the trial court with instructions to allow plaintiff to amend her petition under La.Code Civ.Proc. art. 934 to allege facts that could remove the grounds for the exception of prescription. In so doing, we explained that "[i]f Dr. Menville withheld information from the patient regarding her physical condition, his act of doing so, while in itself a tort, might also serve to trigger the third category of contra non valentem (prevention by the debtor)." Id. at 310. We further noted that this court had never decided whether Section 5628 precludes applicability of the third category of contra non valentem.
This court's application of Section 5628 in Whitnell I to hold plaintiff's claim of negligent misdiagnosis prescribed or perempted accords with the decision on rehearing in Crier v. Whitecloud, 486 So.2d 713 (La.1986), in which I concurred. Because this court apparently is not presently inclined to reconsider the constitutional issue decided in Crier, I agree that Section 5628 (if constitutional) precludes the application of the fourth category of contra non valentem.[5]

Third Category of Contra Non Valentem
The third category of contra non valentem applies when the debtor himself has done some act that effectually prevents the creditor from availing himself of his cause of action. Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979).
In Rajnowski v. St. Patrick's Hosp., 564 So.2d 671 (La.1990), the plurality decision held that the third category of contra non valentem did not apply because the test results that the doctor failed to disclose did not constitute material information. The concurring justice in the four-to-three decision expressed his opinion that even if the test results constituted material information and the nondisclosure prevented the patient's *34 timely filing of the action, the doctrine of contra non valentem cannot be invoked because the doctor did not intentionally conceal that information. The concurring justice expressed his belief that the third category of contra non valentem does not apply when the doctor's act or omission that prevented the patient's discovery of the cause of action was merely negligence or innocent misrepresentation.
The three-justice plurality decision in Rajnowski turned on the lack of materiality of the non-disclosed information and not on the lack of intentional concealment of that information. This court has never held that the third category of contra non valentem does not apply when a doctor, who has actual knowledge of material information about a patient's condition, fails to disclose the information for some reason short of intentional concealment.[6]
The doctrine of contra non valentem is based on the principle that prescription does not run against a party who is unable to act. The doctrine prevents the commencement or the running of liberative prescription under certain circumstances. While the fourth category of contra non valentem focuses on the reasonableness of the creditor's inaction, Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), the third category focuses on the conduct of the debtor that effectually prevents the creditor from asserting a cause of action timely. There is a vast difference between the situation in which a doctor negligently fails to learn material information about the patient's condition and the situation in which the doctor knows material information and breaches his or her duty to disclose the information to the patient. In the former situation, the doctor commits a single breach of duty to diagnose correctly the patient's condition which is known neither by the doctor nor the patient, and the fourth category of contra non valentem would apply but for Section 5628. In the latter situation, the doctor, who is in a fiduciary relationship with the plaintiff, has a continuing duty to disclose the known material information, not only on the day that the doctor learns the information, but also on every day thereafter until the patient learns the information from another source. Breach of this continuing duty is analogous to a continuing tort, and a new cause of action (with a new prescriptive or peremptive period) arises each day that the doctor fails to disclose, either intentionally or negligently, the material information known by the doctor but not by the patient, and thereby effectually prevents the patient from availing himself or herself of the cause of action.
In the present case, if it were undisputed that Dr. Menville knew from the biopsy report that plaintiff had a cancerous or pre-cancerous condition, then I would apply the third category of contra non valentem to prevent commencement of Section 5628's peremptive period. However, Dr. Menville testified that he interpreted the pathology report as not revealing the presence of cancer cells, and the pathologist testified that Dr. Menville's interpretation was "fair and reasonable."
In determining the conflict over whether Dr. Menville knew from the biopsy report that plaintiff had a cancerous or pre-cancerous condition, the trial court (on the first remand by this court) applied the standard postulated by the Rajnowski concurrence that would require intentional concealment for the third category of contra non valentem to apply. I disagree that intentional concealment should be required; I would apply the third category when a doctor, with knowledge of material information about a patient's condition, prevents the patient from availing himself or herself of the cause of action by failing to reveal to the patient the vital information that the patient relies solely on the doctor to disclose.
Accordingly, I would remand the case to the trial court for a factual determination under the proper standard[7] of whether Dr. *35 Menville knew plaintiff had a cancerous or pre-cancerous condition that he failed to disclose, either intentionally or negligently. If so, then I would hold that the third category of contra non valentem applies to prevent the commencement of Section 5628's peremptive period. If not, then neither the doctor nor the patient knew the material information, and the third category of contra non valentem does not apply.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Chief Justice Pascal F. Calogero was not on panel. Judge Henry L. Yelverton, Court of Appeal, Third Circuit, participated as Justice Pro Tempore, in place of Justice James L. Dennis.
[2] 94-2937 (La. 1/6/95), 648 So.2d 910 and 95-0112 (La. 2/3/95), 649 So.2d 395, respectively.
[3] 525 So.2d 361 (La.App. 4th Cir.1988).
[4] 530 So.2d 553 (La.1988).
[5] 540 So.2d 304 (La.1989).
[6] 592 So.2d 429 (La.App. 4th Cir.1991).
[7] 598 So.2d 345 (La.1992).
[8] 629 So.2d 1146 (La. 1993).
[9] 93-2468, 94-0343 (La.App. 4th Cir. 11/4/94), 646 So.2d 989.
[10] La.R.S. 40:1299.42(1) limits the total amount recoverable to $500,000.00, plus interest and costs for all malpractice claims for injuries to or death of a patient.
[11] 462 So.2d 149 (La.1985).
[12] In United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), the United States Supreme Court confirmed the following rule:

"one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."
[13] This ruling by the Court does not address the constitutionality of La.R.S. 9:5628 as it applies to individuals with diseases that have latency periods in excess of three years. The court has basically declined to decide on this issue because it is not presently before it.
[14] 477 So.2d 1094 (La.1985).
[15] See Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), in which the Louisiana Supreme Court determined that the Louisiana equal protection clause is separate and distinct from its federal counterpart, and that the federal multi-level system is an inappropriate model to interpret the Louisiana Constitution. In Sibley, the Court adopted a more viable model, which invalidates enforcement of legislative classifications in three instances: 1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; 2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; and, 3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of the disadvantaged class [emphasis added] shows that it does not suitably further any appropriate state interest.
[16] Mrs. Whitnell argued that the legislature had no valid state purpose for enacting La.R.S. 9:5628 because the Legislature's purported governmental interest, the alleviation of a medical malpractice insurance crisis, did not exist. She maintained (and the court of appeal agreed), that the increase in insurance rates was a normal actuarial aberration. See, Whitnell v. Silverman, et al, 646 So.2d 989 (La.App. 4th Cir.1994).
[17] See, Church Point Wholesale Beverage v. Tarver, 614 So.2d 697 (La.1993).
[18] Crier v. Whitecloud, 496 So.2d 305, 310 (La. 1986).
[1] The third and fourth categories of contra non valentem listed in Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1321-22 (La.1979), are:

(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
[2] This second period of limitation is a prescriptive period which may be interrupted or suspended.
[3] This latter period, although characterized by this court (see, e.g., Crier v. Whitecloud, 486 So.2d 713 (La.1986)) and others as a prescriptive period, is really one of peremption. La.Civ.Code art. 3458. Unless timely exercised, a right is extinguished upon the expiration of a period of peremption which cannot be renounced, interrupted or suspended. La.Civ.Code art. 3461.
[4] Curtailment of the discovery rule in medical malpractice actions was one of the principal purposes of the adoption of Section 5628, which is a statute of repose.
[5] A case with a lengthy latency period might call for our reexamination of the Crier decision on the constitutionality of Section 5628.

Section 5628 distinguishes not only between victims of medical malpractice and victims of other torts, but also between medical malpractice victims with injuries that manifest themselves within three years and victims with injuries that remain latent beyond three years. While such classifications are usually analyzed for equal protection purposes under a rational basis standard (the asserted rational basis being the perceived medical malpractice insurance crisis in the 1970s), there are also due process implications to the analysis.
There have been suggestions that only a small percentage of medical malpractice claimants are affected by a three-year statute of repose. See Scott A. DeVries, Medical Malpractice Acts' Statutes of Limitations as They Apply to Minors: Are They Proper?, 28 Ind.L.Rev. 413, 415 (1995) (discussing a survey that suggests a three-year occurrence-based rule would time-bar only ten percent of malpractice claims). The converse, however, is equally trueonly a small percentage of claims against health care providers are eliminated by such a statute. Depriving a few perhaps horribly injured innocent victims of their claims in order to relieve a few health care providers of late filing problems such as lost evidence, faded memories and unavailable witnesses appears to be fundamentally unfair, which is the hallmark of a due process violation. The medical malpractice victim, who has the ultimate burden of proof at trial, labors under the same difficulties caused by the late manifestation of an injury, which is not attributable to the victim. The latency of the injury may not alone provide constitutional justification for preferring the medical profession over the victims of medical professionals who are thereby deprived of compensation for their injuries.
[6] The decision in Hillman v. Akins, 93-0631 (La. 1/14/94), 631 So.2d 1, held that the third category of contra non valentem did not apply because the record did not contain "any evidence proving that any of the defendants knew the device had not been approved by the FDA."
[7] The denial of certiorari by this court at 598 So.2d 345 (La.1992), indicating that the "trial court correctly concluded that the doctor did not prevent timely filing of plaintiff's action intentionally, fraudulently or by ill practice," may be the law of the case in this court, but is not res judicata on the applicability of the third category of contra non valentem. Writ denials do not make law, particularly in cases involving remands after partial judgments, despite the contrary decision in Rivet v. Department of Transp. and Dev., 96-0145 (La. 9/5/96), 680 So.2d 1154.