11 JONES, Judge.
Appellant, Gary Gochnour, appeals the judgment of the trial court which held that his medical malpractice action against appel-lee, Louisiana State University Dental School, had prescribed. After reviewing the record and applicable law, we reverse and remand.
Gochnour alleges that he was overexposed to high-power x-rays at Louisiana State University Dental School in 1973. Several days after the alleged overexposure, he reported the incident to the New Orleans District Attorney’s Office which declined to investigate Gochnour’s case for lack of evidence. Gochnour asserts that shortly after the overexposure, he noticed the appearance of red marks resembling a butterfly on his cheek but he failed to associate the marks with the x-rays. He alleges that his doctor dismissed the marks as “lupus or something” when he visited the doctor about two weeks following the alleged overexposure.
On November 8, 1994, Gochnour claims that he overheard a discussion between his dentist and a colleague, in which the dentist suspected that Gochnour [2had developed os-teo-radio-necrosis. Gochnour further claims that the skin marks which he noticed in 1973 reappeared about this same time period. These occurrences caused Gochnour to surmise that his development of osteo-radio-necrosis and the facial marks resulted from his overexposure to dental x-rays in 1973. Gochnour commenced a medical malpractice action against Louisiana State University Dental School (“the State”) in federal court in late August, 1995. On March 20, 1996, during the pendency of his federal suit, Gochnour filed a petition for a medical review panel with the Louisiana Division of Administration. On March 22,1996, Gochnour filed a Motion for Voluntary Dismissal of his federal action. This dismissal was granted on March 26,1996.
In response to Goehnour’s petition for a medical review panel, the State filed a Petition to Institute Discovery and an Exception of Prescription in the Civil District Court for the Parish of Orleans. The trial court sustained the exception on June 3, 1996. This appeal followed.

*250
DISCUSSION

Gochnour contends the trial court erred in holding the law of prescription bars his claim. The applicability of the doctrine of prescription in medical malpractice actions is outlined in LSA-R.S. 9:5628:
“No action for damages for injury or death against any physician, chiropractor, nurse, licensed mid-wife practitioner, dentist ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.”
In re Medical Review Panel for Claim of Milton, 593 So.2d 795, 796 (La.App. 4th Cir. 1992); In re Gore, 590 So.2d 677, 679 (La. App. 3rd Cir.1991).
| oThe State argues the trial court’s decision was proper because Gochnour filed his claim more than twenty years after the sued-upon malpractice incident. We disagree. “Mere notice of a wrongful act is insufficient to commence the running of prescription. The potential claimant must be able to state a cause of action consisting of both the wrongful act and resultant damages.” Abrams v. Herbert, 590 So.2d 1291, 1295 (La.App. 1st Cir.1991); Stevenson v. Touro Infirmary, 640 So.2d 633, 634 (La. App. 4th Cir.1994). In 1973, Gochnour was unable to state a cause of action consisting of both the wrongful act and resultant damages because he did not discover his damages until 1994 when he displayed symptoms of osteo-radio-necrosis and observed a reoccurring skin condition. Gochnour’s discussion with the D.A.’s Office in 1973 merely indicated his apprehension that he was overexposed to radiation. “Mere apprehension that something is wrong will not begin prescription under La. R.S. 9:5628.” Stevenson, 640 So.2d at 633.
Gochnour asserts that he did not discover his development of osteo-radio-ne-crosis, or connect his skin condition with the x-ray exposure, until 1994. On November 8, 1994, the appellant claims that he overheard a discussion between his dentist and a colleague, in which the dentist suspected Gochn-our’s development of osteo-radio-necrosis. About this same time period, Gochnour further claims that the skin marks, which he noticed in 1973, reappeared. Gochnour states, “I made an attempt to learn the reason for the red marks [in 1973]. The marks only lasted a few weeks [after the alleged overexposure]. The doctor thought it was lupus. For a few weeks I thought I was going to die as I’ve been told I have latent lupus. I wish I had known what the red marks were, I would have had proof for the District Attorney. I never thought for a minute it was an x-ray bum, not until 1994 when brown marks formed in the same place and same shape as the red marks had been.... ” In Stevenson, this court held that when the plaintiff [¿treasonably believed the physician’s explanation that her child’s hair loss was temporary that the prescriptive period did not commence until the plaintiff was on notice that the conduct of the physician caused permanent injury. Stevenson, 640 So.2d at 633.
“A plaintiff cannot be charged with knowledge of the doctor’s negligence when she continues to believe the doctor’s explanation. Baum v. Cato, 599 So.2d 909 (La. App. 4th Cir.1992). Even if a malpractice victim is aware that an undesirable condition developed after medical treatment, prescription does not run as long as it is reasonable for the victim not to recognize that the condition is related to the alleged malpractice. Griffin v. Kinberger, 507 So.2d 821 (La.1987); Chatman v. ABC Insurance Company, 534 So.2d 1 (La.App. 4th Cir.1988)....”
Id. Under this reasoning, Gochnour cannot be charged with notice of the State’s alleged misconduct before 1994 because he had no prior knowledge of his development of osteo-radio-necrosis and he reasonably believed his doctor’s explanation that his skin condition was unrelated to his exposure to dental x-rays. Thus, we find that this action’s pres- *251 eriptive period did not begin to run until Goehnour discovered his injuries in November 1994.
We farther find that Goehnour’s action was filed within its prescriptive period. In Baum v. Cato, the court held that a plaintiff must file his claim within a year of discovering his injuries. Baum v. Cato, 599 So.2d 909, 910 (La.App. 4th Cir.1992). Goehnour filed a civil action against the State in the U.S. District Court, Middle District of Louisiana, within a year of his discovery of injury. While Gochnour’s federal complaint was not made a part of the record, the State acknowledged that Goehnour filed said complaint before November 1995. This filing interrupted the prescriptive period. “If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to |sa defendant served by process within the prescriptive period.”[1] LSA-C.C. Art. 3462. Prescription was interrupted in this matter because the State received proper notice of the federal action before November 1995.
The State has also acknowledged that the action in federal court was voluntarily dismissed by the appellant on March 26, 1996.[2] Under Louisiana law, a voluntary dismissal will usually nullify an interruption of prescription. “Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at trial.” LSA-C.C. art. 3463; Levy v. Stelly, 277 So.2d 194, 195 (La.App. 4th Cir.1973); Tug Alamo, Inc. v. Electronic Service, Inc., 275 So.2d 419, 420 (La.App. 4th Cir.1973). However, this general rule does not apply when a second action is commenced before the voluntary dismissal of the original action. Levy v. Stelly, 277 So.2d at 196; Tug Alamo, Inc. v. Electronic Service, Inc., 275 So.2d at 420. In Tug Alamo, the court held:
“[T]he question of whether a claim is prescribed must be decided according to the circumstances at the time of its filing (or, if appropriate, service). Thus a suit filed after the first suit is dismissed is filed at a time when the first suit’s interruption is considered as never having occurred and therefore prescription has accrued. But a second suit filed before the first suit is dismissed is filed at a time when the interruption has occurred and therefore prescription has not accrued. And prescription cannot thereafter accrue since the second suit itself interrupts (and suspends) the running of prescription.” (Emphasis added).
Tug Alamo, Inc. v. Electronic Service, Inc., 275 So.2d at 420. Goehnour filed his petition to convene a medical review panel with the Louisiana Division of | fAdministration on March 20, 1996, six days before he dismissed his federal action. Thus, he filed his second action at a time when the interruption was still effective and prescription had not therefore tolled.
Accordingly, we reverse the judgment of the trial court granting the State’s Exception of Prescription, and remand this action to the trial court.

REVERSED AND REMANDED.

. LSA-R.S. 40:1299.39.1 disallows the filing of a state medical malpractice complaint in federal court prior to the review of said complaint by a state medical review panel. ''B.(l)(a)(i) No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section.” LSA-R.S. 40:1299.39.1.

. Notably, neither Gochnour's Motion to Dismiss nor the order of the federal court granting dismissal were made a part of the record.