733 So.2d 698 (1999)
Patricia Miller Neal and Her Husband Richie H. NEAL
v.
PENDLETON MEMORIAL METHODIST HOSPITAL.
No. 99-C-0040.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
Rehearing Denied May 28, 1999.
*699 Eve Barrie Masinter, Monica A. Frois, McGlinchey Stafford, PLLC, New Orleans, Counsel for Defendant/Relator.
C.A. Fleming, III, Fleming & Rosamond, L.L.P., Metairie, Counsel for Plaintiffs/Respondents.
Peter J. Butler, Peter J. Butler, Jr., Michael C. Luquet, Breazeale, Sachse & Wilson, New Orleans, Amicus Curiae (Hospital Service District Number 1 of the Parish of Jefferson d/b/a West Jefferson Medical Center).
Charles F. Gay, Jr., Cristina R. Wheat, Adams and Reese, LLP, New Orleans, Amicus Curiae (Alton Ochsner Medical Foundation).
Susan E. Henning, James A. Cobb, Jr., Emmett, Cobb, Waits & Kessenich, New Orleans, Amicus Curiae (Christian Health Ministries).
Peter T. Dazzio, Chris J. LeBlanc, Watson, Blanche, Wilson & Posner, Baton Rouge, Amicus Curiae (Louisiana Hospital Assocation).
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge Pro Tempore PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tem.
The relator, Pendleton Memorial Hospital, seeks review of a judgment rendered on December 8, 1998 denying its exception of prescription. Relator's writ application was timely filed in this court on January 7, 1999. The respondents filed a response to the writ application on January 28, 1999, and the relator filed a reply brief on February 3, 1999. Additionally, on January 29, 1999 amici curiae briefs were filed on behalf of Alton Ochsner Medical Foundation and Christian Health Ministries in support of the writ application.
On or about November 15, 1996, the plaintiffs, Patricia Miller Neal and Richie Neal, filed a complaint with the Patients' Compensation Fund alleging that during 1981 Mrs. Neal was hospitalized at Pendleton Memorial Hospital. During that time the Hospital administered and/or sold Mrs. Miller several units of blood contaminated with the Hepatitis C virus. In 1996 Mrs. Neal learned she had contracted hepatitis and that the most likely cause of her condition was the blood transfusion(s) from the hospital. The plaintiffs stated causes of action in strict liability and negligence against the hospital.
While the complaint was still pending before the medical review panel, the relator filed an exception of prescription seeking dismissal of the plaintiffs' action under La. R.S. 9:5628. Following a hearing, the trial court took the case under advisement and later denied the exception.
The sole issue presented in this writ application is whether the trial court erred when it found that the plaintiffs' medical malpractice complaint had not prescribed.
Relator argues that the action prescribed pursuant to the provisions of La. R.S. 9:5628. At the time that the plaintiff *700 received the blood transfusion in 1981, La. R.S. 9:5628 provided in relevant part:
§ 5628. Actions for medical malpractice
No action for damages for injury or death against any ... hospital duly licensed under the laws of this state ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. (emphasis added)
In Walker v. Bossier Medical Center, 30-715 (La.App. 2nd Cir. 6/24/98), 714 So.2d 895, writ denied, 98-2029 (La.11/13/98), 730 So.2d 450, 1998 WL 958979, the Second Circuit affirmed a judgment sustaining an exception of prescription in a case that is factually indistinguishable from the instant case. In Walker v. Bossier Medical Center, the plaintiff received a blood transfusion while hospitalized at Bossier Medical Center in January of 1981. In February of 1992 she was informed that she suffered from hepatitis and the likely source of the virus causing her illness was the 1981 blood transfusion. Within a year of learning that she had received blood contaminated with Hepatitis C, the plaintiff filed a medical malpractice action alleging a cause of action in strict liability. Bossier Medical Center filed a peremptory exception of prescription or peremption arguing that the plaintiffs claim was barred by the provisions of La. R.S. 9:5628. The trial court sustained the exception of prescription, and the appellate court affirmed that ruling.
At the hearing on the exception, the plaintiffs' attorney conceded that no good faith arguments could be made to support a finding that the plaintiffs' negligence cause of action had not prescribed. However, the plaintiffs maintained that the action for strict liability had not prescribed because this claim could not be considered a medical malpractice action; thus La. R.S. 9:5628 did not apply. The trial court apparently agreed because it expressly rejected the holding in Walker v. Bossier Medical Center. The trial court stated that the Second Circuit's holding was based on flawed and inconsistent logic. Instead, the trial court concluded that the case was governed by Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211. The court noted that in Branch the Supreme Court concluded that La. R.S. 9:5628 was intended to apply only to medical malpractice actions and was not intended to apply to strict products liability actions in tort.
We find that the trial court erred in relying upon Branch because the holding in Branch was based primarily upon the Supreme Court's understanding of what acts constituted malpractice under La. R.S.40:1299.41 in July and August of 1976, the time period during which the plaintiff in Branch received the blood transfusion that allegedly caused his hepatitis. In reaching the conclusion that La. R.S. 9:5628 did not apply to a strict tort liability action arising out of the sale of blood, the court stated:
The conclusion that the special medical malpractice statute of limitation, R.S. 9:5628, does not apply to a strict tort products liability action arising out of the sale of blood in a diseased or defective condition is confirmed when the statute is interpreted in reference to other laws on the same subject matter. La.Civ.Code art. 13. During the legislative session in which R.S. 9:5628 was enacted, the lawmakers added the Medical Malpractice Act, R.S.40:1299.41 through 1299.49, by Act No. 817 of 1975, which, in pertinent parts, provided:

*701 § 1299.41. Definitions and general applications
A. As used in this Part:
* * * * * *
(8) "Malpractice" means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.
* * * * * *
The Medical Malpractice Act, like the special medical malpractice statute of limitations, does not mention strict liability or products liability and uses terms associated with the traditional medical malpractice action based primarily on professional negligence and implied contract concepts, ... On the other hand, like the medical malpractice statute of limitations, the Medical Malpractice Act does not contain the terms and concepts indispensable to the definition, classification and administration of strict tort products liability actions. Interpreting the special statute of limitation for medical malpractice actions in reference to the Medical Malpractice Act, therefore, makes firmer our conclusion that it was not the legislative aim to subject any strict tort product liability action to the special statute of repose for malpractice suits.

For the foregoing reasons we are convinced that R.S. 9:5628 was intended to apply only to medical malpractice actions and was not intended to apply to strict products liability actions in tort. (emphasis added)
Branch, 92-3086, pp. 12-14, 636 So.2d at 216-217.
Branch differs from the instant case in that the blood transfusions that caused the plaintiffs injury occurred on July 19, 1976 and August 4, 1976. At that time, the previously cited language of La. R.S. 40:1299.41(A)(8) as amended by Act No. 817 of 1975 was still in effect. However, La. R.S. 40:1299.41(A)(8) was amended by Acts 1976, No. 183, § 1 to provide as follows:
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
Several courts have held that the new language effectively overrules Branch. See, DeBlanc v. Touro Infirmary, 96-1965 (La.App. 4th Cir. 12/27/96), 686 So.2d 1015; Landry v. Alton Ochsner Foundation Medical Center, 95-883 (La.App. 5th Cir. 2/27/96), 671 So.2d 24; Sonnier v. Opelousas General Hosp., 95-1560 (La.App. 3rd Cir. 5/8/96), 688 So.2d 1040; Kidder v. Savoy Medical Center, 95-1228, (La.App. 3d Cir. 3/6/96), 673 So.2d 210, 210. As noted by the court in Sonnier:
In the 1976 amendment, the legislature expanded the definition of malpractice from unintentional tort and breach of contract as a general rule to include "all legal responsibility of a health care provider arising from defects in blood." This definition would include the legal responsibility arising from a strict liability or products liability action. Thus, as of the effective date of the 1976 amendment, causes of action arising from defects in blood fall within the definition of "malpractice" under the Medical Malpractice Act.
Sonnier, 95-1560, pp. 3-4 (La.App. 3rd Cir. 5/8/96), 688 So.2d at 1042.
In Sonnier the court specifically considered whether Branch was applicable. In reaching the conclusion that Branch did not apply, the Sonnier court took note of Cedotal v. Community Blood Ctr. of La., Inc., 93-1167 (La.App. 1 Cir. 6/30/94); 644 So.2d 663, writ denied, 94-2433 (La.11/11/94); 645 So.2d 629, wherein the *702 First Circuit, relying on Branch, found that the Medical Malpractice Act did not apply to a cause of action arising out of the sale and use of a tainted blood product in 1984. However the court also noted that Cedotal did not address the effect of the 1976 amendment of La. R.S. 40:1299.41(A)(8). For that reason, the court chose not to follow the rationale advanced in Cedotal.[1]
In DeBlanc v. Touro Infirmary, 96-1965 (La.App. 4th Cir. 12/27/96), 686 So.2d 1015, this court considered the issue of whether the Louisiana Medical Malpractice Act required that a claim against a hospital arising from a blood transfusion in 1977 must first be submitted to a medical review panel. This court noted that the effect of the 1976 amendment of the definition of malpractice had recently been addressed by the Third and Fifth circuits in Kidder v. Savoy Medical Center and Landry v. Alton Ochsner Foundation Medical Center. This court found the decisions to be persuasive and adopted the holding in those cases. This court specifically found that, "[T]he Act as amended in 1976 clearly defines malpractice to include all legal responsibility of a health care provider arising from defects in blood" DeBlanc, 96-1965, p. 1 (La.App. 4th Cir. 12/27/96), 686 So.2d at 1017. Accordingly, this court affirmed the granting of the defendant's exception of prematurity where the plaintiff failed to submit the case to a medical review panel.
Mrs. Miller received the allegedly defective blood transfusion in 1981, well after the effective date of Acts 1976, No. 183, § 1. Because the plaintiffs' cause of action arose after La. R.S. 40:1299.41(A)(8) was amended, it clearly must be considered a malpractice action. Consequently, it is barred by the provisions of La. R.S. 9:5628.
In the instant case, the trial court also cited Casey v. Southern Baptist Hospital, 526 So.2d 1332 (La.App. 4th Cir.1988) to support its position that the plaintiffs' action had not prescribed. In Casey this court concluded that a statute that removed strict liability in cases involving blood transfusions was unconstitutional due to procedural defects involved in the passage of the statute. Based on Casey, the trial court concluded that in the Fourth Circuit the doctrine for strict liability for defects in blood was not abrogated until July 15, 1982. For this reason, the trial court concluded the plaintiffs' complaint was timely. However, prescription was not an issue in Casey. Rather, the court only considered the constitutionality of La. R.S. 9:2797 and La. C.C. art. 2322.1, statutes that purported to eliminate strict liability in cases involving blood transfusions. This court did not make any references to La. R.S. 40:1299.41 in Casey. Accordingly Casey is not relevant.
The trial court apparently sought an equitable solution because of the apparent unfairness of an act that effectively extinguishes a plaintiffs action before the plaintiff has any notice that a cause of action exists. In this respect, the trial court adopted the approach taken by this court in earlier cases wherein this court sought to prevent such an unfair result. However, the rulings from the Supreme Court do not support such an approach. See, In Medical Review Panel for the Claim of Gochnour, 96-2091 (La.App. 4th Cir. 3/12/97), 691 So.2d 248, reversed, 97-0912 (La.5/16/97), 693 So.2d 787, wherein this court reversed a judgment dismissing a plaintiffs dental malpractice action as prescribed under La. R.S. 9:5628. In that case the plaintiff brought his action twenty years after the incident forming the *703 basis for the malpractice occurred. This court opined that a potential claimant must be able to state a cause of action consisting of both the wrongful act and resultant damages in order for the prescriptive period to apply. However, the Supreme Court reversed this court's judgment and reinstated the judgment of the trial court sustaining the exception of prescription and dismissing the plaintiffs claims. The court issued no written opinion in the case.
More recently, this court considered the applicability of La. R.S. 9:5628 in the context of an alleged incident that occurred eight years before any injury was manifested. In In re Medical Review Panel of Brown, 97-2803 (La.App. 4th Cir. 7/1/98), 715 So.2d 1249, writ denied, 98-2020 (La.11/6/98), 728 So.2d 390, 1998 WL 958682, cert. denied, ___ U.S. ___, 119 S.Ct. 1356, 143 L.Ed.2d 518 (1999), this court affirmed a judgment dismissing a medical malpractice action as prescribed under La. R.S. 9:5628. The plaintiffs had filed their medical malpractice complaint in May of 1994. They alleged that two physicians at Charity Hospital performed surgery to remove a mass from the right breast of their seventeen-month-old daughter in 1985. When the child reached puberty, her left breast developed but her right breast did not. In February of 1994 the child and her parents were informed that the right breast would not develop because the breast tissue was surgically removed in 1985. In response to the plaintiffs' complaint, the defendants filed an exception of prescription. This court found that because the plaintiffs did not commence their malpractice claim within three years from the 1985 surgical removal of the breast their claim had prescribed under La. R.S. 9:5628.
Further, citing Crier v. Whitecloud, 496 So.2d 305 (La.1986), this court rejected the plaintiffs' argument that the three year limitation in La. R.S. 9:5628 violated the plaintiffs' rights to due process and equal protection. However, the court noted that in Whitnell v. Silverman, 686 So.2d 23, 686 So.2d at 29 n. 13, the court refused to address the issue of whether the limitation might be unconstitutional as applied to individuals with diseases that have latency periods in excess of three years because that issue was not before the court. Justice Lemmon stated in his dissent: "A case with a lengthy latency period might call for our reexamination of the Crier decision on the constitutionality of Section 5628." Whitnell, 686 So.2d at 33 n. 5 (Justice Lemmon dissenting). Until such time as the Supreme Court reexamines the Crier decision, this court is bound by that decision.
The trial court erred in relying upon Branch, a case that has been legislatively overruled. Accordingly, the writ application is granted, the judgment of the trial court is reversed, the exception of prescription is sustained, and the complaint is dismissed with prejudice.
TRIAL COURT JUDGMENT REVERSED; EXCEPTION OF PRESCRIPTION MAINTAINED; SUIT DISMISSED WITH PREJUDICE.
NOTES
[1] In DeBlanc this court found the Cedotal decision to be troubling. This court noted that the reported facts indicated that the plaintiff had become infected by a blood transfusion received in 1984, after the effective dates of La. C.C. art. 2322.1 and La. R.S. 9:2797. Because those statutes immunized the hospital and blood bank from liability in strict products liability cases, this court stated that the Cedotal decision was inexplicable. DeBlanc, 96-1965, p. 3 (La.App. 4th Cir. 12/27/96), 686 So.2d at 1016, footnote 1.